ELIZABETH C. BENNETT, Respondent, *v.* WASHINGTON GARLOCK, Appellant.

In 1808, Matthew and Martha Codd, the parents of plaintiff, being each the owner in fee of certain real estate, joined in a deed by its terms conveying to certain trustees named, "their heirs and assigns," all the lands, etc., of which the grantors, or either of them, were seized, in trust: 1st. To sell and dispose of so, much thereof as should be necessary to pay all debts then subsisting against the grantors. 2d. To lease, etc., the residue, the net profits and avails to be paid Matthew during his life for the support of the grantors and their children; if Martha survived then to her during her life for the maintenance of herself and children. 3d. The trustees, the survivor of them and the heirs and assigns of said survivor, to hold all the residue not sold to pay debts, "for the sole use, benefit and behoof of such persons as shall be the right heirs" of the grantors at the time of the death of the survivor; reserving to the grantors power by will or appointment to direct to whom, upon the death of the grantors, the residue of the estate should go. 4th. Upon request of the grantors, in the discretion of the trustees, to sell and convey any portion of said lands. Plaintiff was living at the time of the execution of this deed. Martha, the survivor of the grantors, died in 1871. In an action of ejectment, commenced in 1874, to recover lands of which Martha was seized in fee at the time the deed was executed, defendant claimed by adverse possession commenced in 1842. *Held* (RAPALLO, J., dissenting), that by the deed the whole estate in law and equity was vested in the trustees, subject only to the execution of the trust; that the ersons for whose benefit the trust was created took no estate in the lands, but simply an equitable interest, a right to enforce the performance of the trust in equity; that upon the death of her mother plaintiff became entitled to the rents and profits and to the actual possession of the lands remaining in the hands of the trustees; but that the remainder in the plaintiff was limited upon the trust estate, and if by the acts or the negligence of the trustee their estate had been defeated, or their right of action for its possession barred, the remainder was defeated, and plaintiff's right of action also barred; and that therefore the adverse possession was a good defense.

*Bennett* v. *Garlock* (10 Hun, 328), reversed.
*Nichol* v. *Walworth* (4 Denio, 385) and *Norton* v. *Norton* (2 Sand., 296), distinguished.

(Argued January 23, 1879; decided January 13, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, reversing a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury, and granting a new trial. (Reported below, 10 Hun, 238.)

This was an action of ejectment to recover possession of the undivided third part of certain lands in the town of Frankfort, Herkimer county.

The plaintiff claimed as a remainderman under a deed of trust, executed by her parents, Matthew Codd and Martha, his wife, in 1808. The defendant claimed title by adverse possession under a tax sale deed, executed by the comptroller to one Charles Gray, on the 12th day of July, 1841, the sale having been made in 1839, for a tax which was assessed upon the premises in 1832.

The plaintiff was born in the year 1802, or 1803. On the 24th day of May, 1808, Martha Codd was the owner in fee of the premises described in the complaint, together with other lands; on that day she executed with her said husband, as parties of the first and second parts, to Samuel Sidney Breese, and Abraham Varick, jr., of the third part, and to their heirs and assigns, the trust deed in question. Said deed witnessed : " That the said parties of the first part, and second part, for, and in consideration of one dollar, to them in hand paid, and in order to effect the uses and trusts hereinafter particularly mentioned, have, and each of them, doth hereby grant, release and convey unto the said parties of the third part, and their heirs and assigns, all the lands, tenements, hereditaments and real estate, whatsoever or wheresoever, whereof they, the said parties of the first and second parts, are, or whereof either of them is seized or entitled to, either in law or equity, together with all and singular the

rights, interest, property, and estate, which they, the said parties of the first and second parts, or either of them, have or hath, of, in or to said lands, tenements and real estate either in law or equity, wheresoever the same may be situated. To have and to hold the said lands, tenements, hereditaments, and premises, with their appurtenances, unto the said parties of the third part, and their heirs and assigns, as joint tenants, and not as tenants in common, in trust for the uses, intents and purposes following, to wit: First. For the intent and with full power and authority to said parties of the third part, and the survivor, and the heirs and assigns of such survivor of them to sell and dispose of so much of said lands, tenements and hereditaments, with the appurtenances, as shall be sufficient to pay and satisfy all debts, dues and demands now subsisting and founded in law or equity against them, the said parties of the first part, and second part, or either of them. *Secondly.* In trust as to the residue of said lands, tenements and hereditaments, to lease, manage, cultivate and improve the same in such manner and upon such terms and conditions as to said trustees, or the survivor of them, or the heirs or assigns of such survivor shall, from time to time, deem proper, and most for the interest and benefit of said parties of the first and second parts, or the survivor of them; the net profits, or avails whereof, are to be paid and accounted for to said Matthew Codd during his life-time quarterly, or as often as may be reasonably required by him for the support and maintenance of said Matthew and Martha Codd, and their children; and if said Martha Codd shall survive her said husband, then the said net profits or avails are to be paid and accounted for to her quarterly, or as often as may be reasonably required by her during her natural life for the maintenance of herself and said children. Thirdly. In trust, and upon this express intent that said trustees and the survivor of them, and the heirs and assigns of said survivor shall hold all the residue of said lands, tenements and hereditaments, with their appurtenances, over and above what may be sold as aforesaid for the payments of said debts,

dues, and demands now subsisting as aforesaid, for the sole use, benefit, and behoof of such person as shall be the right heirs of them, the said Matthew and Martha Codd, at the time of the death of the survivor of them, that is to their children or grandchildren, or such other person as by the laws of the State of New York would be heir or heirs of the said Matthew and Martha Codd at the time of the death of the survivor of them, if this deed had not been made. Provided, however, and it is expressly intended that in order to secure the respect and obedience of their children and grandchildren, or other representatives, the said Matthew Codd and Martha Codd may, if they can agree and deem it proper by their joint-will or appointment in due form of law to be executed, direct and appoint the persons to whom and for whose use the said trust estate of the said residue of said lands shall go, upon the decease of the survivor of said Matthew and Martha Codd; which will or appointment so jointly executed as aforesaid, may be revoked or annulled by a proper instrument in writing, by either of said Matthew or Martha Codd at his or her pleasure, and, in case of such revocation, the said estate shall go to their right heirs afore-said. Fourthly. It is understood and provided, that if at any time the said Matthew Codd and Martha Codd shall jointly, by a proper instrument in writing signed by them respectively, and attested by two subscribing witnesses, request the said trustees or trustee to sell and convey any portion of said lands over and above what may be necessary for payment of debts as aforesaid, the said trustees or trustee in case of survivorship, may, and is hereby authorized to comply with such joint-written request; but it is expressly understood and agreed that such request shall not be obligatory upon said trustees or trustee, but it shall be discretionary in said trustees or trustee to comply with such request or not."

. There was a subsequent provision, declaring that the trustees should not be held accountable for net profits or avails until the same should be actually received by them,

Breese and Varick, the trustees named in the deed,. accepted the trust, and continued trustees until July 6, 1814,. when by a decree of the Court of Chancery directing the. same they executed a conveyance transferring said trust to· Thomas Addis Emmett, as sole trustee, the conveyance being· in form, to him, his heirs and assigns, upon the same trusts. as held by Breese and Varick, and Emmett accepted the trust. Emmett died in 1827. In December, 1854, Thomas. Cunningham was appointed trustee of said trust, and: accepted the same, and in March, 1855, by. conveyance duly executed by the heirs of Emmett, the trust estate was trans-- ferred to said Cunningham; the conveyance containing a. full recital of the previous trust deeds, and proceedings in. court in respect to the continuance and transfer of the trust. Martha Codd, whose name at the time of her death was. Martha Bradstreet, died December, 1, 1871, leaving as her heirs at law the plaintiff, a son, and the children of a. deceased daughter. No will or appointment was made by· the grantors as provided for in said trust deed.

*Henry A. Foster*, for appellant. A tax sale deed, though made without authority, if apparently valid on its face, is a. sufficient foundation for an adverse possession. (*Finley* v. *Cook*, 54 Barb., 10; *Hilton* v. *Bender*, 2 Hun, 1; Blackwell on Tax Titles [3d ed.], 568, 572; *Dillingham* v. *Brown*, 38· Ala., 311; *Prescott* v. *Nevers*, 4 Mason, 326; *Little* v.. *Magginer*, 2 Maine, 176; *Brockett, Petitioner*, 53 id., 236; *Wells* v. *Company*, 47 N. H., 235, 260, 261.) Any deed or· conveyance, though void, will lay a foundation for an adverse; possession of the lands described in it. (*Lessee of Clark* v.. *Courtney*, 5 Peters, 320, 354; *Jackson* v. *Newton*, 18 J. R.,. 355; *Northrop* v. *Wright*, 7 Hill, 477; *Jackson* v. *Wheat*, 18 J. R., 40; *La Frambois* v. *Jackson*, 8° Cow., 609; *Brad-- street* v. *Clark*, 12 Wend., 674; *Bogardus* v. *Trinity Church*,. 4 Sand. Chy., 738, 739; *Humbert* v. *Trinity Church*, 24 Wend., 587, 604, 612, 613, 614, 632, 633, 638, 639, 640; *Kent* v. *Harcourt*, 33 Barb., 491.) The tax sale deed being.

fair on its face, no imputations upon the motives of the adverse holder are to be indulged, unless clearly proved. (*Clapp* v. *Bromagham*, 9 Cow., 531, 558, 559; *Sands* v. *Hughes*, 53 N. Y., 297.) A grantee always holds adversely to the grantor, as well as to all others. (*Bradstreet* v. *Huntington*, 5 Pet., 429, 448.) Even if Gray had been in possession under the mortgage, he could purchase the tax title for himself, and in hostility to Mrs. Bradstreet's rights, and of all others who claimed to own the premises. (*Hilton* v. *Bender*, 2 Hun, 1; *Nellis* v. *Lathrop*, 22 Wend., 121; *Ten Eyck* v. *Craig*, 62 N. Y., 406, 422, 423; *Link* v. *Doerfer*, 42 Wis., 391; 24 Am. ·Rep., 417; *Lessee of Ewing* v. *Burnet*, 11 Pet., 41.) The giving of a lease is, of itself, an assertion of title in the lessor. (*Wilklow* v. *Lane*, 37 Barb., 244, 248; *Northrop* v. *Wright*, 7 Hill, 477, 488.) One holding adversely, or otherwise, may purchase an outstanding title in support of his own, whether he doubts the validity of his previous title or not, and such purchase or purchases will not affect the right or title under which such purchaser previously claimed to hold. (*Northrop* v. *Wright*, 7 Hill, 477, 489, 495; *Burhans* v. *Van Zandt*, 7 Barb., 92, 102; *Jackson* v. *Newton*, 18 J. R., 355.) An actual, exclusive, open and notorious possession under a claim of title adverse to all the world, gives a good title. (*Cahill* v. *Palmer*, 45 N. Y., 478; *Kent* v. *Harcourt*, 33 Barb., 491; *La Frambois* v. *Jackson*, 8 Cow., 589; *Bogardus* v. *Trinity Church*, 4 Sandf. Chy., 634.) A possession adversely commenced is presumed to continue adverse so long as the possession is maintained. (*Bogardus* v. *Trinity Church*, 4 Sandf. Chy., 744; 1, Greenl. Ev., §§ 41, 42; *Wilkins* v. *Earle*, 44 N. Y., 192.) The question of adverse possession is a question of fact, to be proved by the claims, acts, motives, etc., of the disseizor, all of which are questions to be determined by the jury, or by the court when tried by the court alone. (Code of Procedure, § 272; Code of Civil Procedure, § 1338; *Booth* v. *Pierce*, 28 N. Y., 465; *Bradley* v. *Aldrich*, 40 id., 504; *Case* v. *Phelps*, 39

id., 164, 167.)   Where a trust is to the trustees and their
heirs and assigns, if the trustee or trustees die, their heirs take
the trust and hold it until the court shall see fit to appoint
another.   (*Wood* v. *Martin*, 38 Barb., 473; 44 N. Y., 249;
*King* v. *Donnelly*, 5 Paige, 46;  *McCarty* v. *Orphan Asylum*,
9 Cow., 437.)   A trust to sell lands for the payment of debts
necessarily conveys the fee of the lands to the trustees
whether the words " heirs of the trustees " are inserted or not.
(1 Perry on Trusts [2d ed.], § 315;  *Anderson* v. *Mather*, 44
N. Y., 249;  *Bain* v. *Matteson*, 54 id., 666.)   The adverse
possession having barred the legal estate of the trustees,
it necessarily barred also any interest or estate, legal or
equitable, which Martha Bradstreet had to the premises.   It
certainly barred all her interest as *cestui que trust*.   (1 R. S.,
729, § 60;  *Nicoll* v. *Walworth*, 4 Den., 385; 4 Kent Com.,
310, note *a ;  Amery* v. *Lord*, 5 Seld., 403;  *Knox* v. *Jones*,
47 N. Y., 389, 396;  4 Kent, 233–310;  Greenl. Cruise, 388,
tit. 12, chap. 2, § 4;  2 Greenl. Cruise, 268, tit. 31, chap. 2,
§ 59;  *Lewellin* v. *Mackwort*, 15 Vin. Ab., 125;  Angel on
Lim., §§ 166, 473;  *Cholmondely* v. *Clinton*, 2 Merw., 361;
*Hovenden* v. *Ld. Annesly*, 2 Sch. & Lef., 629;  *Coleman* v.
*Walker*, 3 Metc. [Ky.], 45;  *Smilie* v. *Biffle*, 2 Barr., 152;
*Wyck* v. *East India Co.*, 3 P. Wms., 310.)   No estate or
interest in the " residue " ever vested in the plaintiff during
the life of her mother.   (*Silvester* v. *Wilson*, 2 Tr. Rep.,
444, 451;  *Neville* v. *Saunders*, 1 Vern., 415;  *Knox* v. *Jones*,
47 N. Y., 390;  *Hotchkin* v. *Humphrey*, 2 Mad. Chy., 374;
*Bidefield* v. *Record*, 2 Sim., 354;  *Young* v. *Robinson*, 8 Jur.
[N. S.], 825;  *Graves* v. *Simpson*, 10 id., 609;  *Collier* v.
*McBean*, 34 Beav., 426;  *Fortescue* v. *Satterthwaite*, 1 Ired.,
566;  *Hargrave* v. *Cartier*, 3 Vez. & B., 79;  *Doe ex dem.* v.
*Hopkinson*, 5 Add. & Ell. [N. S.], 223;  *Smilie* v. *Biffle*, 2
Barr., 52.)   The plaintiff was incapable of taking a vested
remainder under the trust deed as one of the right heirs of
Matthew and Martha Codd.   (1 Coke's Inst., 22, *b ; Fen-
wick* v. *Mitford*, 1 Leon., 182;  *Counden* v. *Clarke*, Hob.,
30 *a*, 34 *a ; Cholmondely* v. *Clinton*, 2 Mer., 222–223;

*Godolphin* v. *Abingdon*, 2 Atk., 57; *Read* v. *Erington*, Cro. Eliz., 321; Greenl. Cruise [2d ed.], 328, Pl. ; 3 R. S. [2d ed.], 577; *Rogers* v. *Rogers*, 3 Wend., 521; *Campbell* v. *Rawdon*, 18 N. Y., 416, 417; *Sheridan* v. *Howe*, 4 Keyes, 569; *Moore* v. *Little*, 41 N. Y., 71, 72.) The statute of uses of 1787 (1 Greenleaf's ed. of the Laws 361, and 1 N. R. L., 72) has no application in this case. (*Chudleigh's Case*, 1 Coke's Rep., 126; 2 Washb. on Real Prop. [4th ed.], 410, Pl. 11; *Ref. Dutch Church* v. *Veeder*, 4 Wend., 492.) As already appears there was no life estate created by the deed in Mr. and Mrs. Codd ; but only a life interest in the net profits and avails, and a remainder, either legal or equitable, could not be limited on that. (Gerard's Title to Real Estate, 217 ; *Doe* v. *Consadine*, 6 Wall., 474; *Leslie* v. *Marshall*, 31 Barb., 567; Fearne on Remainders, 281; *Goodright* v. *Cornish*, 1 Salk., 226; *Doe* v. *Carlton*, 1 Wilson, 225, 226; *Harris* v. *Barnes*, 4 Bar., 2157, 2162; 4 Kent's Com., 199; 2 Blk. Com., 164; *Jackson* v. *Robbins*, 16 J. R., 537, 589; *Preston* v. *Funnel*, Willes' Rep., 164; *Pell* v. *Brown*, Cro. Jac., 590.) During the life of her mother plaintiff had not, at common law, even an estate "in expectancy," but a mere "possibility of a use." (3 R S. [2d ed.], 570, 571 ; Bouvier's Law Dictionary, "Springing use" ; 4 Kent's Com., 295, 298 ; *Moore* v. *Little*, 41 N. Y., 93; Bouvier's Law Dict., "Possibility ; " 1 Hilliard on Real Prop., 34; *Pelletrieu* v. *Varick*, 11 Wend., 110; *Jackson* v. *Waldron*, 13 id., 178; *Edwards* v. *Varick*, 5 Denio, 664, 691; *Boynton* v. *Hubbard*, 7 Mass., 112; 10 Coke's Rep., 51; *Miller* v. *Evans*, 19 N. Y., 384, 390, 395; 3 Washb. Real Prop. [4th ed.], 94, Pl. 15.) As plaintiff had no vested estate in remainder, as to whatever other right or interest which she had in the trust estate, she was *cestui que trust* to the trustees, as well as to the trust for the main tenance, and she should compel the trustee to protect that interest. (Perry on Trusts [2d ed.], §§ 15, 17, 326, 346, 357, 621, 816; *Griffin* v. *Ford*, 1 Bosw., 124; *Wormley* v. *Wormley*, 8 Wheat., 421; *Hubbard* v. *Medbury*, 53 N. Y., 99;

Willard on Real Estate, 158, 172.) Under a legacy to the issue of A., all descendants are entitled, and take *per capita* as joint tenants. (*Davenport* v. *Hanberry*, 3 Ves., 257; *Leigh* v. *Norbury*, 13 id., 340, 344; Bouvier's Law Dict., "*Per Capita.*")

*Edward C. James*, for respondent. If, by the trust deed of May 24, 1808, plaintiff became vested with a future or expectant estate in the lands, whether legal or equitable, then a title by adverse possession against such estate during the continuance of the life estates was impossible, as no possession can be deemed adverse to a party who has not, at the time, the right of entry and possession. (*Webster* v. *Cooper*, 14 How. [U. S.], 488; *Carver* v. *Jackson*, 4 Pet., 1; *Christie* v. *Gage*, 71 N. Y., 189, 192–193; *Pratt* v. *Pratt*, 6 W. Dig., 407; *Devyr* v. *Shaefer*, 55 N. Y., 446; *Jackson* v. *Schoonmaker*, 4 J. R., 390; *Jackson* v. *Sellick*, 8 id., 262; *Jackson* v. *Johnson*, 5 Cow., 74; *Jackson* v. *Mencius*, 2 Wend., 357; *Clark* v. *Hughes*, 13 Barb., 147; *Randall* v. *Rabb*, 2 Abb. Pr., 307; *Wells* v. *Prince*, 9 Mass., 508; *Wallingford* v. *Hearl*, 15 id., 471; *Doe* v. *Edmonds*, 6 M. & W., 295; 1 R. S., 725, § 32.) A trustee takes that quantity of interest only which the purposes of the trust require and the instrument creating it permits. The legal estate is in the trustee so long as the execution of the trust requires it, and no longer, and then it vests in the person beneficially entitled. (*Nichol* v. *Walworth*, 4 Den., 385, 388; *Norton* v. *Norton*, 2 Sandf., 296; *Poor* v. *Considine*, 6 Wall., 458, 471; *Adams* v. *Adams*, 6 Q. B., 860, 866; Perry on Trusts, §§ 319, 320; 1 R. S., 730, § 67; *Bellinger* v. *Shafer*, 2 Sand. Chy., 293.) There was no proof of any debts existing against the grantors at the time this deed was made, and hence this trust is not shown to have ever had vitality. (*Heardson* v. *Williamson*, 1 Keen, 33, 41; *Ward* v. *Barbury*, 18 Beav., 190; *Selden* v. *Vermilyea*, 3 N. Y., 525; *Kettel* v. *Osborn*, 3 T. & C., 45; *James* v. *Bion*, 2 Sim. & Stu., 600.) The presumption of payment will attach after twenty

years, notwithstanding the trust. (*Martin* v. *Gage*, 9 N. Y.,
398; Laws of 1875, chap. 545; *Carter* v. *Barnardiston*, 1
P. Wms., 518; 1 Salk., 153.) As under the trust the
grantors could pay their own debts, had debts existed, the
trustees would have taken only a power. (*Kenrick* v. *Lord
Beauclerck*, 3 Bos. & Pul., 175; *Kimber* v. *Cafe*, 7 Exch.,
675; *Hamton* v. *Shotter*, 8 Ad. & Ell., 905; Perry on
Trusts, § 308.) Had the trustees taken an estate under the
clause to pay debts, it would attach only to so much of the
lands as would be sufficient to pay the debts then existing,
a quantity which could have been immediately ascertained.
(*Hawker* v. *Hawker*, 3 Barn. & Adol., 537.) The existence
of such an estate in the trustees would not prevent the remain-
ders, limited upon the residue, vesting as legal estates.
(*Popham* v. *Bumpfield*, 1 Vern., 79; *Glover* v. *Monckton*, 3
Bing., 13; *Collier* v. *McBean*, 34 Beav., 426; *Muller* v.
*Claridge*, 6 Com. B., 641; *Warter* v. *Hutchinson*, 1 Barn. &
Cres., 721; *Ackland* v. *Lutley*, 9 Ad. & Ell., 879, 893; *Jones*
v. *Say*, 3 Brown's Parl. Cas., 458; *Ward* v. *Amory*, 1 Cur-
tis C. C., 419, 428; *Carver* v. *Jackson*, 4 Pet., 1.) On the
expiration of the lives of Matthew and Martha Codd, the
purposes of this trust would cease, and the estate of the
trustees would then also cease. (2 Jarman on Wills, 213,
214; *Welch* v. *Allen*, 21 Wend., 147; *Blacker* v. *Anscombe*,
4 Bos. & Pul., 25; *Bain* v. *Matteson*, 54 N. Y., 663.) Under
the third clause of the trust deed of 1808, the plaintiff, who
was living when said deed was executed, became immediately
vested with a legal estate in remainder, limited by way of
use. (2 Washb. on Real Estate, chap. 2, §§ 2, 8; 4 Kent's
Com., 205, 237; 1 Saunders on Uses, 105, 106; 1 Cruise,
tit. XI, chap. 3, §§ 5, 19, 22, note 1; 2 id., tit. XVI, chap.
5, §§ 1, 15, 16, 17; *Reformed Dutch Church* v. *Veeder*, 4
Wend., 494; *Carver* v. *Jackson*, 4 Pet., 1, 90; *Jones* v. *Say*,
3 Brown's Parl. Cas., 458; *Shapland* v. *Smith*, 1 id., 75;
*Hallan* v. *Ironmonger*, 3 East, 533; *Terry* v. *Collier*, 11 id.,
377; *Silvester* v. *Wilson*, 2 Term, 444; *Willis* v. *Martin*,
4 id., 39; *Foster* v. *Hayes*, 2 El. & Bl., 27; 4 id., 717;

Lewin on Trusts, 253, 254; *Webster* v. *Cooper*, 14 How. [U. S.], 488, 497–498; *Ward* v. *Amory*, 1 Curtis C. C., 419; *Ware* v. *Richardson*, 3 Md., 505; *Green* v. *Green*, 23 Wall., 486, 491; *Vanderheyden* v. *Crandall*, 2 Denio, 9; 1 N. Y., 491; *Bellinger* v. *Shafer*, 2 Sand. Chy., 293; 68 N. Y., 61; 4 Kent Com., 205; *Barnes* v. *Provost*, 4 J. R., 61; *Nodine* v. *Greenfield*, 7 Paige, 544, 548; *Right* v. *Creber*, 5 Barn. & Cres., 866; *Bills* v. *Hopkinson*, 5 Q. B., 223; *Comerback* v. *Perryn*, 3 Term., 484; *Williamson* v. *Field*, 2 Sand. Chy., 533; *Moore* v. *Littel*, 41 N. Y., 60; *Provost* v. *Colyer*, 62 id., 545, 552; *Willis* v. *Martin*, 4 Term., 39, 63; *Cunningham* v. *Moody*, 1 Ves. Sr., 174, 177; *Foster* v. *Hayes*, 2 El. & Bl., 27; 4 id., 717; *Jones* v. *Say*, 3 Brown's Parl. Cas., 458; *Shapland* v. *Smith*, 1 Brown's Chy. Cases, 75; *Hallan* v. *Ironmonger*, 3 East, 533; *Terry* v. *Collier*, 11 id., 377; *Hayward* v. *Whitby*, 1 Barr., 228; *Blaker* v. *Anscombe*, 4 Bos. & Pul., 25; *Warter* v. *Hutchinson*, 5 Moore, 143; 1 B. & C., 721; *Green* v. *Green*, 23 Wall., 486, 491; *Silvester* v. *Wilson*, 2 Term, 444; *Collier* v. *McBean*, 34 Beav., 426; *Mogg* v. *Mogg*, 1 Meriv., 654, 678, 689; *Playford* v. *Hoare*, 3 Y. & J., 175; *Muller* v. *Claridge*, 6 M. G. & S., 641; *Thurston* v. *Thurston*, 6 R. I., 296; *Biscoe* v. *Perkins*, 1 V. & B., 485; *Curtis* v. *Price*, 12 Ves., 89; *Turner* v. *Dorvell*, 5 Term, 518; *Littledale* v. *Smeddle*, 2 B. & Ald., 126; *Owen* v. *Smith*, 2 H. Bl., 594; *Marshall* v. *Hill*, 2 M. & S., 608; *Mott* v. *Buton*, 7 Ves., 201; *Phipps* v. *Ackers*, 9 Cl. & Fin., 583; 4 M. & G., 1107; *Booth* v. *Edlin*, 4 Ad. & El., 582, 591; *Clarke* v. *Davenport*, 1 Bosw., 95, 114, 115; *Pitcher* v. *Carter*, 4 Sand. Chy., 1; *Wood* v. *Mather*, 38 Barb., 473; 44 N. Y., 249; 4 Kent's Com., 216, 310, note *d;* *Nicoll* v. *Walworth*, 4 Den., 385; 68 N. Y., 234; *Manice* v. *Manice*, 43 id., 303, 370, 373; *In re Livingston*, 34 id., 555; 4 Kent, 243, 245, 246.) The Revised Statutes having taken effect many years before the adverse entry under which defendant claims, plaintiff is entitled to the benefit of all those provisions by which formal trusts were turned into legal estates, and all other provisions

not altering or impairing any vested estate, interest or right, or altering or affecting the construction of this trust deed. (*Bellinger* v. *Shafer*, 2 Sand. Chy., 293; 1 R. S., 750, § 11; *Manice* v. *Manice*, 43 N. Y., 303, 370; *In re Livingston*, 34 id., 555; 44 id., 249; 1 R. S., 729, § 61; id., 723, § 10; id., 725, § 32.) Plaintiff's estate under the trust deed was a vested legal remainder. (*Vanderheyden* v. *Crandall*, 2 Den., 9; 1 N. Y., 491; *Carver* v. *Jackson*, 4 Pet., 1; *Webster* v. *Cooper*, 14 How. [U. S.], 488; *Ward* v. *Amory*, 1 Curtis C. C., 419.) Even if plaintiff's estate in remainder had been an equitable estate during the lives of her parents, it would not be barred by the statute of limitations. (*Williamson* v. *Field*, 2 Sand. Chy., 533, 562; Cruise, tit. XII, chap. 1, § 34; *Burgess* v. *Wheate*, 1 Eden, 177, 223–224; *Cholmondely* v. *Clinton*, 2 Jac. & W., 1, 148; *Croxall* v. *Shererd*, 5 Wall., 268, 281; *Walton* v. *Walton*, 7 J. Chy., 258, 273; *Selby* v. *Alston*, 3 Ves. Jr., 339, 341; 1 R. S., 730, § 65; *Lochmere* v. *Carlisle*, 3 P. Wms., 215; *Decouche* v. *Savetier*, 3 J. Chy., 190, 216; *Kane* v. *Bloodgood*, 7 id., 90–126; *Hubbell* v. *Medbury*, 53 N. Y., 98; Perry on Trusts, §§ 863, 866, 858; *Elmendorf* v. *Taylor*, 10 Wheat., 152; *L. Ass. Scotland* v. *Siddall*, 3 De S., F. & J., 58, 73; *March* v. *Russell*, 3 M. & C., 32; Perry on Trusts, §§ 467, 850, 858, 860; *Allen* v. *Sayer*, 2 Vern., 368; *Torry* v. *Black*, 3 W. Dig., 131; *Thompson* v. *Simpson*, 1 Dr. & War., 459, 489.) Plaintiff's estate under the trust deed is a fee simple. (1 Coke Inst., 10, a; 4 Greenl. Cruise, tit. 32, chap. 21, § 90; 1 Washb. Real Est., chap. 3, § 58; *Provost* v. *Colyer*, 62 N. Y., 545, 549, etc.; *Saunders* v. *Hanes*, 44 id., 353.) A deed in the form of a bargain and sale will be construed as a feoffment to uses, whenever such construction is necessary to execute the uses declared thereon, according to the intent of the parties. (*Thatcher* v. *Mans*, 3 Pick., 521; *Durant* v. *Ritchie*, 4 Mason, 45, 69; *Ware* v. *Richardson*, 3 Md., 555; *Green* v. *Green*, 23 Wall., 486; *Bryan* v. *Bradley*, 16 Conn., 474; *Cheney* v. *Watkins*, 1 Har. & J., 527.) The technical English rule, that a use cannot be executed upon a use,

if allowed its fullest scope, does not affect this trust deed. It applied only to strict uses or passive trusts. (4 Denio, 385; Perry on Trusts, § 312; *Roe* v. *Tranmarr*, Willes, 686; Greenl. Cruise, tit. XVI, chaps. 5 and 8; 2 Washb. R. E., chap. 4, 263, chap. 5, 276–282; 4 Kent Com., 238–248, 257–263; *Wyman* v. *Brown*, 50 Me., 139, 157, 158; *Rogers* v. *Eagle F. Co.*, 9 Wend., 630, 637–641; *Vander Volgen* v. *Yates*, 9 N. Y., 219, 223; Lewin on Trusts [3d ed.], 253–254; *Ware* v. *Richardson*, 3 Md., 555; *Cheney* v. *Watkins*, 1 Har. & J., 527; 1 R. S., 727, §§ 45–48; id., 750, § 11; Reviser's Notes, 3 R. S. [2d ed.], 582–583; 23 N. Y., 377–380.) Gray & Hinman were chargeable as constructive trustees. (Perry on Trusts, §§ 217, 828, 829, 830; *Van Epps* v. *Van Deusen*, 2 Paige, 64, 71.) To establish a title by adverse possession it is necessary to prove that the occupant, or those under whom he claims, entered into possession under claim of title, exclusive of any other right, and had a continuous and uninterrupted possession of the premises for twenty years under such claim exclusively. (2 R. S., 294, §§ 9, 11; Code, §§ 82, 84; *Lytle* v. *Beveridge*, 58 N. Y., 593, 606; *Colburn* v. *Morton*, 1 Abb. Ct. App. Dec., 378, 384; *Burhans* v. *Van Zandt*, 7 N. Y., 523.) Gray having had notice of the defects in the tax title, as to him they are as fatal as if the want of authority had appeared on the face of the deed. (*Finlay* v. *Cook*, 54 Barb., 10, 23; *Hilton* v. *Bender*, 2 Hun, 1; *Van Rensselaer* v. *Whitbeck*, 7 N. Y., 517; *Westfall* v. *Preston*, 49 id., 349, 355; *Johnson* v. *Elwood*, 53 id., 431; *Curtis* v. *Follett*, 15 Barb., 337.) This being a trust created for a married woman, was a valid express trust which vested the legal title in the trustee. (Laws of 1849, ch. 375, § 3; Perry on Trusts, § 310; *Ware* v. *Richardson*, 3 Md., 505; *Greene* v. *Greene*, 23 Wall., 486; *Ayer* v. *Ayer*, 16 Pick., 327; *Burhans* v. *Van Zandt.* 7 N. Y., 523; *Calkins* v. *Isbell*, 20 id., 147.)

DANFORTH, J. Upon the facts found and conceded the plaintiff is entitled to recover the premises in question, unless

they were held adversely for twenty years before the commencement of the action. This was the defense spread out in the answer and relied upon at the trial. The trial court found and there was evidence to sustain the finding that the person under whom the defendant claimed, on the 26th day of March, 1842, entered into possession of the premises under claim of title exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question, — that from that time there had been a continual occupation and possession of the same, and therefore the defendant had judgment. The question of fact thus found has not been disturbed by the General Term. The judgment was reversed upon the ground that the plaintiff's estate in the premises was a vested remainder created by deed from her ancestor to Messrs. Breese and Varick, trustees, dated May 24, 1808, but that her right of entry and possession did not accrue until 1871, and as the action was commenced in 1874 the statute was not a bar. The judgment to be given upon this appeal then depends upon the construction of that instrument. It was executed by Matthew and Martha Codd — Martha was the owner in fee of the premises conveyed, of which the land in controversy forms a part, Matthew was her husband, and the plaintiff their child and living, at the time of the execution of the deed. By that deed the grantors in consideration, as it is stated, of one dollar and in order to effect the uses and trusts mentioned, did grant, release and convey unto the trustees above named and their heirs and assigns all the lands, etc., whereof they the said Matthew and Martha were or either of them was seized or entitled to either in law or equity, in trust. First. To sell and dispose of so much of said lands, etc., as shall be sufficient to pay all debts and demands then subsisting against the grantors or either of them. Secondly. In trust as to the residue of said lands to lease, manage, cultivate and improve the same in such manner and upon such terms and conditions as to the said trustees or the survivor of them or the heirs or assigns of such survivor shall from

time to time seem proper and most for the interest and ben-
efit of said Matthew and Martha or the survivor of them, the
net profits and avails whereof are to be paid to Matthew dur-
ing his life-time for the support and maintenance of Matthew
and Martha and their children, and if Martha survives Mat-
thew, then to her during her natural life-time for the mainte-
nance of herself and children.    Third.  That the said trustees
and the survivor of them, and the heirs and assigns of said
survivor, shall hold all the residue of said lands over and above
what may be sold as aforesaid for the payment of said debts,
for the sole use, benefit and behoof of such persons as shall
be the right heirs of them the said Matthew and Martha
at the time of the death of the survivor of them ; that is to
their children or grandchildren or such other person as by
the laws of the State of New York would be heir or heirs of
the said Matthew and Martha Codd at the time of the death
of the survivor of them if this deed had not been made.
Reserving to the grantors however power by will or appoint-
ment to direct to whom upon the death of the grantors
the trust estate or the residue of the lands should go.
Fourth.  Upon request made by the grantors the trustees were
authorized in their discretion to sell and convey any por-
tion of said lands " over and above what may be necessary
for payment of debts. "    The validity of this instrument is
not called in question by the plaintiff, nor could it be, nor
can she be permitted to deny the existence of facts assumed
by it, and in consequence of which the various trusts were
created.  For she introduced it in evidence as part of her
case and as the foundation of her title.  It was however
before the Commission of Appeals, and it was by that court
held that the trusts were valid, that the trustees took the
legal title, and that Martha Codd had no title or interest in
the premises, save the power of appointment by will.  (*Bain.
v. Matteson*, 54 N. Y., 663.)  This power was never exer-
cised.  The defendant prevailed at the trial upon the ruling
of the trial judge that the whole estate in law and equity
was vested in the trustees subject only to the execution of the

trust, that the persons for whose benefit the trust was created took no interest or estate in the lands, but a right in equity to enforce the performance of the trust; and the judgment was reversed upon the theory that the trustees took no greater interest in the lands conveyed than the purposes of the trust required; that if any debts existed they must be presumed extinguished prior to 1871; that the other trust ceased with the death of Martha Codd and that the plaintiff took a vested remainder in fee, which by virtue of the statute of uses was a legal estate and was by it executed at the death of Martha Codd. The existence of the general doctrine in regard to the extent of the estate of the trustees is not questioned, but its application to the case in hand is denied. First, it is to be noticed that the grant is unto Breese and Varick "and their heirs and assigns" of all the lands, etc., whereof the grantors "are or" whereof either of them is seized or entitled to either in law or equity, etc., "in trust for the uses above stated." By these words the trustees *prima facie* at least take an estate in fee and are invested with all the legal and equitable rights of the grantors (1 Perry on Trusts, § 315), and even without these words if the trusts could not be fully executed, except by the trustees taking an inheritance, their estate would be enlarged into a fee simple to enable them to carry out the intention of the grantors "and this" says KENT, C. J. "has been frequently ruled in chancery. And the Court of Kings Bench, in the time of Lord MANSFIELD, made the same decision at law." (*Fisher* v. *Field*, 10 John., 504.)

In the case before us, there is a trust to sell, and a trust to lease; to perform these duties the trustees must have a fee — a less estate would not be sufficient to satisfy the purposes of the trust. (1 Perry on Trusts, § 315; *Collier* v. *Walters*, L. R. [17 Eq. Cas.], 252.

Now what are the trusts here; the first is to sell so much of the lands as shall be sufficient to pay and satisfy all debts, dues and demands then subsisting against the grantors or either of them. By the terms of the deed it is made the duty

of the trustees to sell,—for that purpose a fee is necessary—again it is said that if "a fee be given in terms with trusts which by their nature extend over an indefinite time the estate cannot be cut down." (*Doe* v. *Davies*, 1 Q. B., 430.) Here no time is fixed for the payment of the debts provided for, and the case in that respect is like *Collier* v. *Walters* (*supra*). It is plain that no precise period for the continuation of the trust is mentioned nor could it have been ascertained at the time of the execution of the deed. Again, this power extends to the whole land conveyed and is not confined to any particular piece or parcel of it. The force of the argument then would not be weakened if we knew that the debts could be paid from the proceeds of a small portion and that the whole of the land would not be required for that purpose, the question being what estate was conferred upon the trustees; what ever estate was conferred must vest as to the whole. In *Collier* v. *Walters* (*supra*), it is stated by the master of the rolls as a rule collected from all the authorities "that you cannot cut down the estate in fee simple unless you can point out on the face of the will what less estate the trustees take." That has not been done in this case.

In *Nichol* v. *Walworth* (4 Denio, 385), JEWETT, J., says: "The rule at common law as well as by statute is that the trustee takes that quantity of interest only which the purposes of the trust require and the instrument creating it permits. The legal estate is in the trustee so long as the execution of the trust requires it, and no longer, and then it vests in the person beneficially entitled." And this is cited by the respondent in support of the doctrine on which the judgment of the General Term was placed. The grant in that case was unlike the one before us — there were no words of inheritance — it was unaccompanied by any power to sell or of management on the part of the trustee. The trust was simply to receive the rents, issues and profits of the land and apply the same to the support of a person named, upon the express condition that the same should not be sold during her life, but held for the purpose stated, and the grantor-

added, after her death "I give, grant and convey the said premises to my natural daughter Mary," etc. There the trustee took an estate for the life of the person named in trust for her, and the limitation in remainder after her death was directly to Mary in fee.

*Norton* v. *Norton* (2 Sand., 296), also cited by respondent, is not in conflict with these views. The plaintiff claimed a life estate in the premises as tenant by the curtesy. This was denied, and upon the hearing it appeared that J. L. N. had theretofore granted unto one Hannah Clinton, her executors, etc., all the estate which as husband of Sarah Norton he had in her land in trust for Sarah, giving her power through her said trustee to dispose of the property, collect rents, etc. The questions before the court turned on the effect of this conveyance. It was held that it did not convey the fee; the court saying : "The purpose of this trust was first for Mrs. Norton and second to empower her through her trustee to dispose of the property, manage it, and collect the rents; the first object and all of the second, except the power of disposal, were attainable by a trust which should cease on her death. For those objects therefore the estate of the trustee cannot be deemed to have extended beyond her life; the power of disposing of the property is limited to her alone; there is no limitation in favor of her heirs or devisees, nor any language from which an intention is to be inferred that others were to execute the power." It was held that the trust ceased on Mrs. Norton's death, and that the plaintiff had a legal estate as tenant by the curtesy. There were no words of inheritance; none from which an intent could be inferred of a greater estate than for the life of Mrs. Norton, nor any object to be accomplished which required it. In the case before us it is quite otherwise. It is claimed by the respondent that the estate of the trustees ceased when the purposes of the trust were accomplished, and assuming that the debts were paid the death of Mrs. Codd put an end to the trust estate. This must be so, but then and for nearly thirty years before that time, the trustees, holders of the

legal estate, had neglected to assert their title.  As against them the defendant had a good title by adverse possession. (Perry on Trusts, § 858; Hill on Trustees, * 267; *Lewellen* v. *Mackworth*, 2 Eq. Ca. Abr., 579; *Hounden* v. *Lord Annesley*, 2 S. & Lef., 629; *Pentland* v. *Stokes*, 2 Ball & B., 175.)

What estate has the plaintiff?  Not a legal estate in fee, for as we have seen the whole legal estate vested in Breese and Varick as trustees.  Martha Codd had an equitable estate for life, her children, of whom the plaintiff was one, an equitable remainder liable to be defeated by dying before their mother, or in part by after-born children who at the time of the mother's death should be living.  The estate or interest cannot be more than this.  Although the plaintiff was living when the trust was created, she is not named in the deed nor is she referred to as one then in existence. There is even no provision made for children then *in esse*. The beneficiaries are those who as child or grandchild, or those failing, others, are entitled to inherit who shall be living when the mother dies.  The plaintiff happens to be one of them ; and for that reason and not because she was living at the time of the execution of the deed, she takes an interest, which for the reason above stated can be an equitable one merely.  *Wood's Case* in the Supreme Court under the name of *Wood* v. *Mather* (28 Barb., 473), and in the Court of Appeals as *Anderson* v. *Mather* (44 N. Y., 249), sustains this construction.

The defense, good against the trustees, is good against the plaintiff also.  They, had the whole legal and equitable estate ; she, an equitable interest only upon the strength of which she could enforce the performance of the trust in equity.  At the death of her mother, Martha Codd, the plaintiff became entitled to the receipt of the rents and profits and to the actual possession of the land then in the hands of the trustees ; she could have no more.  Whatever way it was conveyed to her, by the trustees themselves or by force of the statute, she took subject to the acts of the trus-

tees and became bound and affected by their affirmative acts, and by their neglects. If by their neglect or consent an estate had been acquired by the defendant, or he had obtained an advantage which prevented the trustees from asserting their title, the plaintiff standing in their place is equally estopped and prevented. In *Jackson* v. *Johnson* (5 Cow., 74), the grant was to A. and his heirs in trust for the children of B. SAVAGE, C. J., says : "A. was authorized to sell the lands to reimburse advances which it was contemplated he would make, and in fact did make. He took the legal estate and the heirs only an equitable one." * * * His (A.'s) acts were valid and binding upon those heirs, and when he conveyed to them the legal estate they took it subject to such equitable interests as the defendant and others had acquired in the lands by virtue of the acts of the trustees. In *Smilie* v. *Biffle* (2 Barr., 52), the court say : "Where *cestui que trust* and trustee are both out of possession for the time limited, the party in possession has a good bar against both." If for any reason the estate of the trustees had been void at its creation, the remainder in the plaintiff, however it may have been termed, would have been void also ; for it is limited upon the trust estate. So if the estate of the trustees is defeated in any way, or if their right of action for its possession is barred, the remainder must be defeated and the plaintiff's right barred, because it rests upon the same title.

But the plaintiff insists that this does not affect her, and as the foundation of her claim asserts, first, that on the execution of the trust deed she became vested with a legal estate in remainder limited by way of use, and second, that the statute did not run against her right of action until by her mother's death, she was entitled to possession, and if this is so, she is entitled to recover. But how can that be ? That the trustees were clothed by appropriate words with all the legal and equitable interests of Matthew and Martha Codd, cannot be denied, and with the language the purpose of the trust concurs. They may sell, of course they may give a good

title as full and perfect as that possessed by the grantors. (*Brewster* v. *Stryker*, 2 Comstk., 19.) A title during the life of Martha Codd would clearly not be such an one. A title subject to a vested remainder in fee would be anything but unincumbered, and yet if the plaintiff is right, such a title is the only one the trustees could give, for that remainder extended to all the lands referred to in the deed. And nothing short of this will aid the plaintiff; for if she did not take a vested remainder at the time of the execution of the deed she would afterwards stand in the place of the trustees and be subject to their acts with no better right of action than they had. There is no ground on which the plaintiff can recover.

The order of the General Term should be reversed, and the judgment of the Special Term affirmed.

RAPALLO, J. (dissenting). I will as briefly as possible state the reasons for my dissent from the conclusion of the majority of the court in this case.

After examination I arrived at the following conclusions, First. That the question whether the remainder limited to the heirs of Matthew and Martha Codd was vested or contingent, is not important. The trustees were, on the death of Matthew and Martha Codd, to hold the land *to the use* of their heirs. Even if contingent this was a legal estate in remainder, to take effect as such on the termination of the trust estate granted to the trustees. It was in legal effect a remainder in fee, limited to the issue or descendants of the grantors, who might be living at the death of the survivor of them, as no other persons could answer the description of heirs of both of them, and that such was the intention of the grantors is manifest from the explanatory words used in the deed, "that is to their children, grandchildren or such other persons as by the laws of the State of New York would be their or heirs of the said Matthew and Martha Codd at the time of the death of the survivor of them, if this deed had not been made." The lands granted belonged to both grantors.

The estate of these heirs was not a mere equitable interest in remainder, which could be made available only through the trustees, or was dependent upon their estate and would fall with it, but, when the limitation took effect by the happening of the prescribed event, the plaintiff became seized of a legal estate in fee, as purchaser from her parents. The grant to the trustees and their heirs being to hold to the use of the remaindermen after the death of Matthew and Martha Codd, no estate vested in the trustees, but the legal estate vested directly in the *cestui que use* whenever the event occurred. This was the law under the statute of uses before the Revised Statutes, and is clearly so under them. The provisions in this respect are expressly made applicable to estates previously created. (1 R. S., 727, §§ 47, 48.) The remainder is the same in effect, as if limited directly to the issue of the grantors, living at the time of the death of the survivor of them.

In substance therefore the trust deed created, first, a trust or power (the deed says "full power and authority") to sell enough of the land to pay the debts of the grantors existing at the date of the deed. This trust or power was to be executed immediately, and during the lives of the grantors, for second, the residue remaining after these sales, is to be held in trust to receive the rents and pay them to the grantors and the survivor of them, for the support of themselves and their children, during the lives of the grantors and the life of the survivor. There is nothing in the deed continuing any trust beyond the lives of the grantors. On the contrary it is expressly provided that the lands not sold as aforesaid shall be held for the use of such persons as would be the heirs of the grantors at the time of the decease of the survivor of them, if the deed had not been made. It was the evident intent, though the language is peculiar, that the estate of the trustees should then cease, and the title vest in these heirs as it would have done if the deed had not been made. No power of sale was to exist after the death of the grantors. In this respect the case differs materially from *Collier* v. *Wal-*

*ters*, (L. R., 17 Eq., 252). There the trust was not, as in this case, to sell part of the land to pay debts, and hold the residue to the use of the remainderman after the death of the beneficiary for life, but to hold the whole property in trust until certain debts and legacies should be fully paid, and to pay them, not by sales of part, but with the net income of the whole, and the trust was, by its terms, to continue even after the death of the beneficiary, if the debts had not then been paid out of the income. The remainder limited on the death of the first named beneficiary and the payment of debts and legacies, was not therefore a legal remainder to take effect on the death of the first named beneficiary.

But in the present case there was no trust even to sell all the lands, but only enough to satisfy the then existing debts. The trust to sell did not apply to the residue, the income of which was to be paid to the grantors. Practically some time would be occupied in ascertaining the debts and selling enough land to pay them, but when this was done it would relate to the time when it should have been done. By the terms of the deed it was to be done immediately, and the rest of the land freed, and on the principle upon which *Manice* v. *Manice* (43 N. Y., 303) was decided, the separation between the land to be sold and the residue to be held in trust, whenever practically carried out, took place in contemplation of law immediately after the delivery of the deed. The residue only passed to the trustees for the benefit of the grantors.

Second. The estate of the trustees was commensurate with the purposes of the trust, no more, no less, and consequently ceased when those purposes ceased. This was the rule at common law as well as under the Revised Statutes. The insertion of words of inheritance in the deed, or their omission, could not control this principle.

Third. Whatever view may be taken of the trust to sell for the payment of debts, and even if it should be held to apply to all the land, which I am clearly of opinion it did not, it was not by its terms to continue beyond the two lives,

and there can be no doubt that it had actually terminated long before the death of Mrs. Codd, the survivor of the grantors. More than sixty years had then elapsed since the creation of the trust, and the authority was to sell for the payment of debts then existing. The power was to be executed immediately, and its execution could have been compelled. The legal presumption of payment is applicable to all those debts.

If any lands were required to be sold for their payment, the presumption is that the sale was made at the time it should have been. There is no pretence that any of the lands now claimed by the plaintiff were so sold or that the defendants claim title under any such sale. On the contrary they claim wholly by reason of an alleged adverse possession, founded upon a void tax sale, and a mortgage executed by one of the *cestuis que trustent.*

The trust terminated therefore by its own limitation on the death of Martha Codd in 1871, and the plaintiff thereupon became seized of a legal estate in fee.

Fourth. The statute of limitations did not begin to run against her until that time. So long as there was an outstanding precedent estate in the trustees, and until the right of the plaintiff to enter accrued, the statute did not run against her. The adverse possession began in 1839, and long before the death of Mrs. Codd the statute had run against the trustees. It may be conceded for the purposes of this case that the equitable interests of the beneficiaries under the trust had been barred. But the legal estate in remainder, limited to take effect after the execution of the trust, was not dependent upon the estate of the trustees, nor derived through them, but came to the plaintiff directly from her parents, and no act or laches of the trustees could bar her right to enter as soon as her right of entry accrued. The statute then, and then only, began to run against her.

Fifth. The previous destruction of the estate of the trustees by disseizin or adverse possession, did not defeat the remainder, even if it was contingent. The provisions of the

Revised Statutes apply to the case. They declare that no expectant estate can be barred by any act of the owner of the precedent estate, or any destruction of such precedent estate by disseizin, etc., or otherwise, and that no valid remainder shall be defeated by the determination of the precedent estate before the happening of the contingency upon which the remainder is limited to take effect, but should the contingency afterwards happen the remainder shall take effect in the same manner as if the precedent estate had continued to the same period. (1 R. S., 725, §§ 32, 34.)

The disseizin or adverse possession in this case did not take place until after the Revised Statutes went into operation. The adverse possession did not begin until 1839, and the effect of the destruction of the precedent estate, upon the remainder limited thereon, is determined by the statute then in force. There is nothing in the Revised Statutes which restricts the operation of these provisions to remainders or expectant estates subsequently created. The only saving clause is that none of the provisions of chapter one shall impair vested estates or interests, except in the case of passive trusts, nor affect the construction of any instrument which had previously taken effect. (1 R. S., 750, § 11.) The sections 32 and 34 above cited do neither. They simply determine the effect which the destruction of a particular estate, occurring after their passage, shall have upon a contingent remainder limited thereon. No rights had become vested in consequence of such destruction, for it had not happened. No retroactive effect is sought to be given to the statute. Neither do these sections affect the construction of the deed.

Sixth. Even if it be held as claimed, that in addition to the remainder, the plaintiff had an equitable interest in the premises under the trust for the support of the grantors and their children, which she could have enforced during the life of her parents, the only effect of her omission to assert that right before the estate of the trustees was barred by adverse possession, was to bar her equitable right as *cestui que trust* to a support out of the income. By thus waiving or losing such

equitable right during the trust, she did not bar her right to claim the legal estate in remainder when the event occurred which entitled her to enter as owner.

I consider these propositions fully sustained by the authorities cited in the briefs of counsel and others which I have examined, but I forbear comment upon them, or an extended discussion, as I merely wish to state the grounds of my dissent.

I am of opinion that the decision at General Term was right and should be affirmed.

All concur with DANFORTH, J., for reversal, except RAPALLO, J., dissenting, and EARL, J., taking no part.

Order reversed and judgment affirmed.