In the Matter of the Estate of JOSEPH WARREN TOMPKINS, Deceased.

DAVID VERPLANCK, as Executor and Trustee of JOSEPH WARREN TOMPKINS, Deceased, Appellant, *v.* JOTHAM S. TOMPKINS, Appellant, and STEPHANIE MOREL, as Executrix of EMIL B. MOREL, Deceased, Respondent.

JOTHAM S. TOMPKINS, Appellant, *v.* DAVID VERPLANCK, as Executor and Trustee of JOSEPH WARREN TOMPKINS, Deceased, Appellant, and STEPHANIE MOREL, as Executrix of EMIL B. MOREL, Deceased, Respondent.

1. WILL — TRUST TO EXECUTORS. A general devise to executors in trust vests no estate in them, except for such of the declared purposes as require that the title be vested in them.

2. TRUST FOR LIVES — VESTING OF REMAINDER. A trust limited to lives offers no greater obstacle to the present vesting of the remainder in fee or residue of personalty than does a life estate.

3. ALIENABLE ESTATE. The grantee of lands devised subject to the execution of a trust has a legal estate against all persons except the trustee (1 R. S. 729, §§ 60, 61); and such an estate is alienable, subject to the execution of the trust.

4. CANONS OF CONSTRUCTION. The canons of construction, that effect must be given, if possible, to every part of the will, and that the testator intended to dispose of his entire estate, applied.

5. EVENTUAL ESTATE. The rule, that rents and profits undisposed of during a valid limitation of an expectant estate shall belong to the persons presumptively entitled to the next eventual estate (1 R. S. 726, § 40), applied.

6. WILL CONSTRUED — VESTED REMAINDER, SUBJECT TO EXECUTION OF TRUST FOR LIVES — TENANCY IN COMMON OF INCOME — PASSAGE OF UNDISPOSED-OF INCOME TO PERSON PRESUMPTIVELY ENTITLED TO EVENTUAL ESTATE. The 4th and 5th clauses of the will of a testator who left a wife, a son and a daughter, directed the executors to sell certain real and personal property and to invest and dispose of the net proceeds "as hereinafter directed as to the residue of my estate or the proceeds thereof." The 6th clause devised to the executors a house and lot, which constituted all the property not dealt with in prior parts of the will, with power to receive the rents during the lives of the wife and son, or that of the longest liver of them, upon the trust to pay the same, during that period, in equal shares to the wife, son and daughter, or the "lawful issue or descendants" of the son or daughter, if either should die before the wife, "such descendant receiving the share of their parent," and directed the executors, at the decease of the wife and son, to "deliver up

to my said children or their descendants the said house and lot, which is then to belong to them in fee." This clause then gave the executors a power to sell, under direction of the court, at any time during the lives of the son and wife or the longest liver of them, directed the proceeds to be invested by the executors and the income paid in equal shares to the wife, son and daughter, and provided that, at the death of the longest liver of the wife and son, the principal should be equally divided between the son and daughter "or their lawful descendants." The 8th clause directed that all moneys arising from sales of real and personal property, ordered to be sold and not otherwise disposed of, should be invested by the executors during the lives of the wife and son, or the longest liver of them, and the interest divided equally between the wife, son and daughter. The property was sold as authorized. The testator's wife died before the daughter, who, dying unmarried and without issue, devised and bequeathed any interest she had in her father's estate to one E. B. M. The latter subsequently died, leaving all his property to S. M. The testator's son, at the time of construing the will, was seventy-three years old and without issue. *Held*, that the words, "or their lawful descendants," in the 6th clause, referred to a death of the son or daughter in the lifetime of the testator; that that clause created a valid trust in the proceeds of the sale of the house and lot, terminable on the death of the son; that, as to the income, the beneficiaries took as tenants in common; that at the testator's death the remainders vested in his son and daughter absolutely, subject to the execution of the trust; that the proceeds of sale of property covered by the 4th and 5th clauses were disposed of by force of the provision therein that they should be disposed of as "hereinafter directed as to the residue of my estate or the proceeds thereof," and the disposition of the residue by the 6th and 8th clauses; that all the residuary interest which the daughter had in the principal of her father's estate, at the time of her decease, passed under her will to E. B. M., and, under the latter's will, to S. M.; that as the daughter took her interest in the income as tenant in common, that interest after her death was undisposed of by her father's will and did not go to the survivor, but passed, by the statute (1 R. S. 726, § 40), to the person "presumptively entitled to the next eventual estate," that is, to E. B. M., the daughter's devisee, and, on his death, to S. M., his devisee; that the trust will continue until the death of the testator's son, and during that time the income of the trust estate, including that of the principal under the 8th clause, must be paid, one-half each, to S. M. and the son; that at the death of the son the trust ends and the *corpus* of the estate must be divided, one half to S. M., or to her representatives or assigns, and the other half to the representatives or assigns of the son; and that E. B. M. was entitled, under the statute, to one-half the income of the estate from the death of the testator's daughter until his decease.

*Tompkins* v. *Verplanck*, 10 App. Div. 572, modified.

(Argued December 7, 1897; decided January 11, 1898.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 26, 1896, affirming an order of the surrogate of Westchester county.

Also an appeal from a judgment of the Appellate Division in the second department, entered December 26, 1896, reversing a judgment of the Special Term, Westchester county, in the action of David Verplanck, as executor and trustee, against Jotham S. Tompkins et al., for an accounting.

Also in an action of Jotham S. Tompkins against David Verplanck, as executor and trustee, for a construction of the will of Joseph Warren Tompkins.

The above two actions were consolidated and tried together.

The surrogate's proceedings and the consolidated actions involve the construction of the said will.

The provisions of the will necessary to be examined are the fourth, fifth, sixth and eighth clauses, which are as follows:

"*Fourth.* All my mills, factories, water power rights of pondage and everything appertaining thereto, situate at Kensico, in the town of North Castle, in the said county, or elsewhere in that town which I may own at my decease, I give and devise to my executors hereinafter named, with power to take possession of, occupy, rent out and keep in repair and receive the rents and profits thereof until the same shall be sold and conveyed by my executors as hereinafter directed, and I do direct my said executors as soon as they can obtain a fair price therefor, to sell and convey the same in fee simple absolute at public or private sale in their discretion in one or more parcels as they may judge most beneficial to my estate, and out of the moneys arising from the sale thereof, to pay and discharge all liens and incumbrances thereon and all other liens and incumbrances on all or any real estate owned by me at my decease, together with all just debts owing by me at my decease; the residue of said sales I direct my executors to invest upon interest and dispose of as hereinafter directed as to the residue of my estate or the proceeds thereof.

"*Fifth.* My dwelling house and about seven acres of land

in the village of White Plains with all the chattels and movable property thereon, and all other lands, tenements or real estate owned by me at my decease, except so much thereof as is in this, my will, otherwise disposed of, I give and devise to my executors hereinafter named, with power to take possession of, rent out, keep in repair, receive the rents and profits thereof, until the same shall be sold and conveyed by my executors as hereinafter directed. I do hereby direct my said executors, as soon as they can obtain a fair price for the same, to sell and convey the same at public or private sale in their discretion, and the moneys arising from the sale thereof I order my executors to invest upon interest and dispose of as hereinafter directed as to the residue of my estate or the proceeds thereof.

"*Sixth.* My house and lot in the city of New York, known as No. 15 Wall street, I give and devise to my said executors with everything appertaining thereto, with power to take possession of, occupy, rent out and keep in repair and receive the rents, issues and profits thereof as if they were owners thereof, during the lives of my wife, Sarah Walton, and my son, Jotham, but upon the express trusts and condition that during the said lives or that of the longest liver of them my said executors, as often as received, pay and distribute in equal parts, the net rents of said house and lot to my said wife, Sarah Walton, my daughter, Marion, and my son, Jotham, or the lawful issue or descendants of my said son or my said daughter, if either should die before my said wife, such descendant receiving the share of their parent, and at the decease of my said wife and son, Jotham, to deliver up to my said two children or their descendants the said house and lot which is then to belong to them in fee, but inasmuch as by fire, accident or change in the city of New York, it may be expedient and necessary or greatly to the interest of my estate during the lives of my said son and wife or longest liver of them to sell and convey said house and lot No. 15 Wall street in fee, in that event, I authorize my said executors to apply to the Supreme Court and upon proof to said court of the pro-

priety and necessity of said sale to its satisfaction, I authorize said court to direct a sale thereof by my said executors in fee, and the moneys arising from the sale thereof to be invested upon interest by my said executors until the death of my said wife and son or the longest liver of them and the interest and income thereof paid in equal shares to my said wife and son and daughter as aforesaid, and at the death of the longest liver of my said wife and son, the principal to be equally divided between my said son and daughter or their lawful descendants.

" *Eighth.* All the moneys arising from the sales of my said real and personal property in this, my will, ordered to be sold and not in this, my will, otherwise disposed of, after payment of all my just debts and liens on my said real estate and the legacy aforesaid, I order my executors to invest and keep invested on interest, on bond and mortgage, on real estate in the state of New York, in the stocks or bonds of the state of New York or of the United States, at the best interest they can obtain for the same during the life of my said wife and son or the longest liver of them, and as often as received to pay and divide equally the said interest between my said wife and son and daughter."

*Abel Crook* for David Verplanck, executor, appellant. The devise to the executor created a valid express trust whereby the executor took by implication as well as by direct devise the entire estate during the lives of the widow and Jotham, subject only to the execution of the trust. (*Nicoll* v. *Walworth,* 4 Den. 385; *Brewster* v. *Striker,* 2 N. Y. 19; *Knox* v. *Jones,* 47 N. Y. 389; *Amory* v. *Lord,* 9 N. Y. 403; *Boynton* v. *Hoyt,* 1 Den. 53; *Garvey* v. *McDevitt,* 72 N. Y. 556; *Tucker* v. *Tucker,* 5 N. Y. 408; *Savage* v. *Burnham,* 17 N. Y. 569; *Radley* v. *Kuhn,* 97 N. Y. 32.) Because of the interposition of the trust estate no portion of the estate vested in the children of the testator, or could vest in them, until the termination of the trust estate — that is, until the

death of Jotham, the longest liver of the selected two lives. (1 Preston on Estates, 65; *Hayes* v. *Good*, 7 Leigh [Va], 496; *Tayloe* v. *Gould*, 10 Barb. 396; *Griffin* v. *Shepard*, 124 N. Y. 70.) The word " descendants," used by the testator in his will, is synonymous with " issue of the body," and does not include collateral relatives. Hence, neither Marion nor Jotham could take from the other under such description. (*Hamlin* v. *Osgood*, 1 Redf. 409; *Armstrong* v. *Moran*, 1 Bradf. 314; *Van Beuren* v. *Dash*, 30 N. Y. 393.) There is no legal presumption that Jotham will not leave descendants surviving him. He may marry and raise a family. (*Apgar's Case*, 37 N. J. Eq. 501; *List* v. *Rodney*, 83 Penn. St. 483.) The trust being valid as an express trust under our statutes, limited by the two lives in being at testator's death, the application or payment of a share in the rents and income must terminate as to each of the three *cestuis que trust* on their respective deaths. (*Downing* v. *Marshall*, 23 N. Y. 377; *Monarque* v. *Monarque*, 80 N. Y. 320; *Crooke* v. *County of Kings*, 97 N. Y. 421; 3 R. S. 3176–3180; 2 R. S. 2193.) The intention of the testator, when ascertained from the will itself, will govern in the construction of wills. (*Shipman* v. *Rollins*, 98 N. Y. 311; *Smith* v. *Edwards*, 88 N. Y. 105; *Delafield* v. *Shipman*, 103 N. Y. 463; *Byrnes* v. *Stilwell*, 103 N. Y. 458; *Scott* v. *Guernsey*, 48 N. Y. 106; *Stevenson* v. *Lesley*, 70 N. Y. 512; *Matter of Baer*, 147 N. Y. 348; *Matter of Merriman*, 91 Hun, 120; *Shangle* v. *Hallock*, 6 App. Div. 55.)

*William L. Snyder* for Jotham S. Tompkins, appellant. Marion W. Tompkins having died unmarried and without issue, leaving her brother Jotham surviving, acquired no property or interest in her father's estate which she could dispose of by a last will and testament. (1 R. S. 728, 730, §§ 55, 65; *Garvey* v. *McDevitt*, 72 N. Y. 556; *Tobias* v. *Ketchum*, 32 N. Y. 326; *Tucker* v. *Tucker*, 5 N. Y. 408; *Radley* v. *Kuhn*, 97 N. Y. 32.) The Appellate Division erred in holding that

the testator died intestate as to the remainder after the termination of the trust estate. (1 R. S. 725, § 28.)

*F. J. Worcester* for Stephanie Morel, respondent. Marion W. Tompkins took a vested alienable interest in the real estate devised by the 6th paragraph of the will, subject to the trust therein created. (*Manice* v. *Manice,* 43 N. Y. 303; *Embury* v. *Sheldon,* 68 N. Y. 227; *Moore* v. *Lyon,* 25 Wend. 144; *Nelson* v. *Russell,* 135 N. Y. 137; *Matter of Seebeck,* 140 N. Y. 241; *Livingston* v. *Greene,* 52 N. Y. 118; *Goebel* v. *Wolf,* 113 N. Y. 405; *Mitchell* v. *Knapp,* 54 Hun, 500; *Matter of Tienken,* 131 N. Y. 391; *Delafield* v. *Shipman,* 103 N. Y. 463; *Matter of Kimberly,* 150 N. Y. 90.) If both Marion and Jotham took, under the will, only such interests in the property as would necessarily cease at their death, then it is submitted that they would each have, notwithstanding the will, the same interest which we have claimed was given to them by the will. (1 R. S. 729, § 62; *Van Nostrand* v. *Marvin,* 16 App. Div. 28; *Howland* v. *Clendenin,* 134 N. Y. 305.) The petitioner in the Surrogate's Court, Mrs. Morel, is also entitled to the income of Marion's share. (1 R. S. 726, § 40.)

*V. Wright Kingsley* also for Stephanie Morel, respondent. Stephanie Morel, through the will of Emil B. Morel, acquired all the residuary interest Marion Tompkins had in the principal of her father's estate at the time of Marion's decease, and she is entitled to half of the income of the trust estate until the death of Jotham Tompkins. Upon his death she is entitled to one-half of the *corpus* of the estate; she is also entitled to one-half the income since the decree entered before the surrogate in January, 1890. (1 R. S. 723, 724, 727, §§ 12, 13, 22, 44; *Kenyon* v. *See,* 94 N. Y. 563; *Tompkins* v. *Verplanck,* 10 App. Div. 572; *Freeborn* v. *Wagner,* 2 Abb. Pr. 182; *Miller* v. *Emans,* 19 N. Y. 387; *Matter of Moore,* 8 N. Y. S. R. 602; *Gurnsy* v. *Gurnsy,* 36 N. Y. 267; *Manice* v. *Manice,* 43 N. Y. 303; *Embury*

v. *Sheldon*, 68 N. Y. 227; *Everitt* v. *Everitt*, 29 N. Y. 39·; *Wells* v. *Wells*, 84 N. Y. 325; *Moore* v. *Lyons*, 25 Wend. 119.)

BARTLETT, J.   We are called upon to construe the will of Joseph Warren Tompkins, deceased, at one time a well-known lawyer in Westchester county.

The testator left him surviving a widow and two children, a son, Jotham S. Tompkins, and a daughter, Marion W. Tompkins.

The testator died in 1874, the widow in 1885 and the daughter in 1889 unmarried and without issue.   The son, Jotham, still survives, a widower without issue, aged seventy-three years.

The daughter, Marion, left a will by which she devised and bequeathed to one Emil B. Morel any interest she had in the estate of her father.

Morel died subsequently, leaving all his property to Stephanie Morel, his wife, who is a party to this action as executrix of her husband's will, and claims to represent the rights of Marion.

The principal point in this case is the construction to be given the sixth clause of the will, which reads in part as follows:

" *Sixth*.   My house and lot in the city of New York, known as No. 15 Wall street, I give and devise to my said executors with everything appertaining thereto, with power to take possession of, occupy, rent out and keep in repair and receive the rents, issues and profits thereof as if they were owners thereof, during the lives of my wife, Sarah Walton, and my son, Jotham, but upon the express trusts and condition that during the said lives or that of the longest liver of them my said executors, as often as received, pay and distribute in equal parts the net rents of said house and lot to my said wife, Sarah Walton, my daughter, Marion, and my son, Jotham, or the lawful issue or descendants of my said son or my said daughter,

81

if either should die before my said wife, such descendant receiving the share of their parent; and at the decease of my said wife and son, Jotham, to deliver up to my said two children or their descendants the said house and lot which is then to belong to them in fee."

Then follows an authorization to sell the premises No. 15 Wall street, with the permission of the court, and a direction to deal with the proceeds substantially as provided for the real estate and its rents and profits.

This property was sold as authorized.

It is the contention of counsel for executor that this clause of the will creates a valid express trust, whereby the executor took by implication, as well as by direct devise, the entire estate during the lives of the widow and Jotham, both in law and equity, subject only to the execution of the trust.

Further, that because of the interposition of the trust estate no portion of the estate vested in the children of the testator, or could vest in them until the termination of the trust estate, that is, until the death of Jotham, the longest liver of the two selected lives; that the death of the daughter Marion has defeated her estate, and that Jotham's estate must necessarily terminate with the trust, because his life is the ultimate one selected upon which its duration depends; that the word "descendants," used by the testator in the will, is synonymous with "issue of the body," and does not include collateral relatives, hence, neither Marion nor Jotham could take from the other.

In the proceedings in Surrogate's Court, instituted to compel David Verplanck as executor and trustee to pay over to petitioner, Stephanie Morel, one-half of the income of certain trust funds created by the will, it is stated in the opinion that Marion took a vested alienable interest in the real estate devised by the sixth clause of the will, subject to the trust therein created; that the rents mentioned in the sixth clause, to which Marion would have been entitled if living, are undisposed of by the will, and they, therefore, belong, under the Revised Statutes (1 R. S. 726, § 40), to the person presumptively enti-

tled to the next eventual estate, and the petitioner, Stephanie
Morel, is such person ; that as to the residue of the real estate
disposed of by the eighth clause of the will testator died
intestate, and, this being so, it vested in Jotham and Marion
immediately upon their father's death, subject to the execution
of the trust, Marion's interest passing under her will.

The Special Term held that the trustees were vested with
the entire legal title of the *corpus* of the estate until the
death of Jotham; that no portion of the principal ever vested
in Marion or passed under her will; that the entire income
since Marion's death belonged to Jotham ; that no portion of
the principal ever vested or can vest in Jotham, and, at his
death, the *corpus* of the estate will vest in the persons, if any,
who will then answer the description of his descendants.

The Appellate Division affirmed the decree of the Surro-
gate's Court and reversed that of the Special Term.

We agree with the learned Appellate Division that the will
created a valid trust and that, as to the income, the bene-
ficiaries take as tenants in common and not as joint tenants.

As to the remainders, on the termination of the trust, the
opinion of the Appellate Division, after dealing with the
difficulties of treating them as contingent, goes on to state :
" But, if the remainders were to be vested subject only to be
divested in favor of descendants, in case the devisee should
leave descendants, then the testamentary direction is wholly
reasonable and natural. We are of opinion that the latter
construction must, therefore, prevail." The opinion then
states that it would be unwise to decide what effect possible
issue of Jotham would have on the vested estates.

We are of opinion that a fundamental error has entered
into the construction of this will as to the effect to be given
the words of gift in the sixth clause, to the son or daughter
or their "lawful descendants."

While these words were treated by the Appellate Division
as a gift by substitution in case of the death of the first lega-
tee or devisee, they were held to refer to a death during the
continuation of the trust.

We think these words refer to a death in the lifetime of the testator, and such a construction removes many of the difficulties in carrying out the obvious intention of the testator.

At the testator's death the remainders vested in Marion and Jotham absolutely, subject to the execution of the trust. (*Livingston* v. *Greene*, 52 N. Y. 119; *Embury* v. *Sheldon*, 68 N. Y. 227; *Nelson* v. *Russell*, 135 N. Y. 137; *Stokes* v. *Weston*, 142 N. Y. 433.)

A general devise to executors in trust vests no estate in them, except for such of the declared purposes as require that the title be vested in them. (*Everitt* v. *Everitt*, 29 N. Y. 39; *Manice* v. *Manice*, 43 N. Y. 303.) In the case at bar the trustees took only such an estate as was commensurate with their trust duties, and those were limited solely to lives. It is clear they never took the remainder in fee, or the residue of personalty after the end of the trust estate. A trust limited to lives offers no greater obstacle to the present vesting of the remainder in fee or residue of personalty than does a life estate.

The trustee takes an estate in possession and such title as will enable him to execute his trust.

The learned counsel for the executor argues that, by reason of the interposition of the trust estate, no portion of the estate vested in the children of the testator until the termination of the trust; that there can be no vested estate without a present legal and existing right of alienation, which cannot be until the termination of the precedent estate.

If such were the effect of an express trust created by will, it would prove a serious obstacle to carrying out the intention of testators.

The Statute of Uses and Trusts provides that, while an express trust vests the whole estate in the trustee in law and in equity, it shall not prevent any person creating a trust from granting or devising such lands, subject to the execution of the trust, and such grantee has a legal estate against all persons except the trustee. (1 R. S. 729, §§ 60, 61.)

Such an estate is alienable, subject to the execution of the trust. (*Briggs* v. *Davis*, 21 N. Y. 576, 577; *McLean* v. *Freeman*, 70 N. Y. 85.)

Starting out with a vesting of the residuary estates at testator's death and adopting the familiar canon of construction, that effect must be given if possible to every part of the will (*Wright* v. *Denn*, 10 Wheat. 239; *Dawes* v. *Swan*, 4 Mass. 208), and that the testator intended to dispose of his entire estate, there is no great difficulty in harmonizing the various provisions of the instrument and preventing intestacy either as to principal or income.

The scheme of the will is simple, and while in some respects it might have been more clearly expressed, yet the general intention of the testator is manifest.

The fourth and fifth clauses direct the executors to sell certain real and personal property, and out of the proceeds pay the liens thereon, the debts of the testator, and to invest the residue and dispose of it in the same manner as the residue of the estate.

The eighth clause provides that all the moneys arising from the sales of real and personal property, and not in the will otherwise disposed of, are to be invested, and the income thereof paid to the widow, son and daughter during the lives of the widow and son and the survivor of them.

It thus appears that the testator, after providing for certain specific legacies, directed the sale of the balance of his estate, real and personal, except his property in the city of New York, and directed the investment of the residue of the proceeds and the payment of the income during the lives of his widow and son to them and his daughter.

The principal arising from the sales with the interest the testator had thus disposed of in the fourth and fifth clauses, in the same manner as the residue of his estate.

The court below, in its opinion, suggests that " the will contains no residuary clause, and makes no further final disposition of the testator's estate other than that prescribed in the sixth and eighth clauses."

The sixth clause deals with the residue of the estate, as all property, real and personal, save that located in the city of New York, is disposed of by the other portions of the will.

The sixth clause, as already pointed out, creates a valid trust in the proceeds of the sale of the New York city property, and the income is disposed of during lives, and the principal divided, on the termination of the trust, between the son and daughter.

The testator, by the fourth and fifth clauses, provides that the net proceeds of the sales under those clauses shall be disposed of " as hereinafter directed as to the residue of my estate." It is thus clear that this principal, invested under the eighth clause, is to be divided between the son and daughter when the trust under the sixth clause terminates, as this investment is limited by the same lives as those upon which the trust rests.

There is no intestacy as to the principal or residue under the eighth clause.

When we read together the portions of the will *in pari materia*, we find that the testator has disposed of his entire estate. (*Allen* v. *Allen*, 149 N. Y. 280–285.)

It follows that all the residuary interest Marion had in the principal of her father's estate, at the time of her decease, passed under her will to Emil B. Morel, and by the will of the latter to his widow, Stephanie Morel.

The interest of Marion in the income of the estate, after her death, was undisposed of by her father's will, as she took as tenant in common, and consequently her share of the income did not go to the survivors. This being the situation, her share goes by statute to the person presumptively entitled to the next eventual estate. (1 R. S. 726, § 40 ; *Embury* v. *Sheldon*, 68 N. Y. 227 ; *Delafield* v. *Shipman*, 103 N. Y. 463.)

As already pointed out, Marion's interest in the principal of her father's estate passed under her will to Emil B. Morel, and from him to his executrix and devisee, Stephanie Morel.

Morel and his widow were thus successively the person entitled to the next eventual estate.

The trust will continue until the death of Jotham, the son, and during that time the income of the trust estate, including that of the principal under the eighth clause of the will, must be paid, one-half each, to Stephanie Morel, as executrix, legatee and devisee under her husband's will, and to Jotham S. Tompkins.

At the death of Jotham the trust ends, and the *corpus* of the estate must be divided, one-half to Stephanie Morel, as executrix, legatee and devisee under her husband's will, or to her successors, heirs, legal representatives or assigns, and the other half to the heirs, devisees, legatees, legal representatives or assigns of Jotham S. Tompkins.

Emil B. Morel was entitled under the statute to one-half the income of the estate from the death of Marion in 1889 until his decease in 1894.

The accounts in the Surrogate's Court should be adjusted on this basis, as Mr. Morel, by his answers in the Supreme Court actions, made a claim to the principal and income.

Stephanie Morel, as executrix, devisee and legatee under her husband's will, is entitled to one-half the income of the estate from and after the death of Emil B. Morel.

The judgment of the Appellate Division should be modified so as to conform to this decision, and as so modified affirmed, with costs in this court to all parties who were allowed costs in the Appellate Division, to be paid out of the principal fund of the estate.

All concur.

Judgment accordingly.