MICHAEL A. WALD and another, Respondents, v. GEORGE J. WEILHAMER, Appellant.

(County Court, Oneida County, November, 1913.)

Deeds — conveyance of leased premises — vesting of fee in trustee.
Evidence — exclusion of testimony — Code Civ. Pro. § 829.

> Under a deed of conveyance of leased premises to the grantee in trust to sell the same for a purpose authorized by statute the fee of the property vests in the trustee, and the lessee under

any lease or renewal of a lease which the grantor might make after he had executed the trust deed would take subject to be divested of his possession by a sale made by the trustee in the performance of the trust.

Where the jury find that an undated endorsement of a renewal of defendant's lease for a further term of five years was made after the landlord had executed the trust deed, which was promptly recorded, the petitioners to whom the premises had been subsequently conveyed were entitled to an order dispossessing defendant because of the expiration of his term, in the absence of reversible error on the trial.

Defendant as a witness was asked "when did you first see the endorsement of renewal upon the lease when," the landlord, then deceased, "was not present"? Held, that the exclusion of the testimony on objection that defendant was incompetent to testify under section 829 of the Code of Civil Procedure was proper.

APPEAL by defendant from an order dispossessing him as tenant of certain premises in the city of Utica, N. Y., in summary proceedings, after trial by a jury, in Justice's Court of the city of Utica.

P. H. Fitzgerald, for appellant.

Grant & Wager, for respondents.

HAZARD, J. Defendant was a tenant under a lease of the premises in question, executed by one I. A. Williams, the term of which expired March 31, 1913. On the 1st day of February, 1909, and after the date of said lease, and while defendant was in possession of the premises in question thereunder, Williams gave what has been called a "trust deed," conveying a number of parcels of real estate, including that leased to the defendant, to his son, Aras J. Williams "as trustee." The deed recites that because of the grantor's advancing years and physical infirmities, it is difficult for the party of the first part to transact, do and per-

form everything and all the details which are necessary to transact, do and perform about and in relation to his various properties, etc., acknowledges receipt of a good and valuable consideration, contains a description of a number of parcels of real estate, and concludes as follows:

"Together with the appurtenances; and all the estate and rights of the said party of the first part in and to said premises.

"To have and to hold the above granted premises unto the said party of the second part as Trustee and his assigns forever."

This conveyance is intended to create an express trust and vest the same in the party of the second part as trustee, for the purpose of selling the above described property, or as much thereof as may be necessary, for the benefit of the Utica Trust and Deposit Company of Utica, N. Y., and the Citizens Trust Company of Utica, N. Y., creditors of the party of the first part. The benefit herein provided for the said companies is to pay to them from the proceeds of sales of said property, so far as may be necessary, ratably and in proportions to the obligations which they severally now hold against the party of the first part. It is expressly herein and hereby provided that as soon as the present liabilities and obligations of the party of the first part to the aforesaid trust companies shall be paid or discharged, the party of the second part shall reconvey to the party of the first part all of the above described premises, or all of such part or parts thereof as shall not have been sold by the party of the second part under and by virtue of this instrument."

The lease under which Weilhamer held the premises in question was executed in duplicate, and upon both duplicates there appears the following endorsement:

"This lease is hereby extended to the party of the

second part for a further term of five years (5 years) from March 31st, 1913, to the 31st day of March, nineteen hundred and eighteen (1918). (Signed) I. A. Williams, G. Joseph Weilhamer.''

It will be observed that this endorsement bears no date, and the question of when it was endorsed upon the lease was the real question of fact litigated before the jury in the court below. Defendant of course could not testify, but it was testified to by the two petitioners, and also by an employee, that on one or more occasions defendant had admitted that the endorsement was made after the giving of the trust deed. These admissions defendant denied, and he was to some extent corroborated in his denial by one witness. The jury has found against him, and it cannot be said that that finding is not supported by the evidence; in fact it would appear that there is a clear preponderance of evidence at least in point of numbers in favor of the petitioners. I think that for the purposes of this appeal the finding of the jury must be sustained as in favor of the petitioners, and that we must go into a consideration of the points of law involved in this case with the assumption that the endorsement of renewal was made upon the lease by I. A. Williams after he had executed the trust deed above referred to. There is certainly nothing in the return which will warrant a reversal on the facts, and I think the findings of the jury should, therefore, stand.

We thus come to the first question of law, the effect of the endorsement in question, and whether I. A. Williams, having executed the trust deed to his son, had any right or power to make the extension agreement on the lease, and whether the petitioners are bound by it. It seems that the parcel in question was conveyed by the trustee to one of the trust companies mentioned in the trust deed as a creditor, and by that trust company conveyed to the petitioners.

The character and effect of the trust deed is assailed by the appellant. He urges that it is nothing more than a power of attorney, or power in trust, and contends that the title to the property remained in the grantor, I. A. Williams. He relies in support of this contention solely upon the case of Heermans v. Robertson, 64 N. Y. 332. That case, so far as the facts and circumstances involved are concerned, is in certain particulars quite similar to the case at bar, but after a careful examination of it I am utterly unable to agree with appellant's contention that it furnishes uncontrovertible authority, or in fact any authority, for a reversal of this judgment. Heermans v. Robertson was decided upon the grounds: *first,* that the conveyance in that case amounted only to a power, and *second,* did not create any of the express trusts authorized by the revised statutes. See Heermans v. Burt, 78 N. Y. 259, where it is said at page 342: " Such a power vests no title in the grantee, but leaves it in the grantor." A careful reading of Heermans v. Robertson makes both of these propositions apparent. It was said " by construing the trust as a power the interests of all are as effectually secured as if the legal estate passed to the trustee." The object of the statute law involved is discussed upon the same page, where it is stated to have been to limit and restrict express trusts to cases in which it was necessary for the protection of those interested that the title or possession should vest in the trustee, and it is said that where no such necessity exists the intent of the statute was that the trust should be executed as a power and without vesting the legal title or possession in the trustee. The fact is then commented upon that " there is no express trust created for the sale of land for the payment of debts by the instrument under consideration," in which particular that case is exactly the opposite of the one at

bar.    Again it is said (p. 343) : ''An intent to create an express trust will not be presumed in the absence of an express declaration to that effect when the whole purpose of the deed, without peril to the rights of any person, can be accomplished under a power confirmed by the deed.''    Here again we have two important circumstances differentiating that case from the one at bar.    In the first place '' the intent to create an express trust '' is clearly expressed in the deed from Williams to his son.    He says so specifically.    On the other hand the '' whole purpose of the deed '' in the case at bar was to enable the grantee to sell the land in question for the benefit of certain creditors.    Beyond all argument in order to carry out the terms of the trust and its very purpose the trustee must have the power to convey an estate in fee simple absolute, otherwise the entire deed and the transaction as a whole necessarily comes to nothing.    We have thus the three salient points.    *First,* that the deed in the case at bar is for a purpose recognized by the statute.    Real Prop. Law, § 96, ¶ 1.    *Second,* that the intent to create an express trust is obvious, being clearly and specifically expressed.    *Third,* that the whole purpose and object of the deed is to enable the grantee to convey the estate in fee simple absolute.    All of these important points differentiate the case so clearly from that of Heermans v. Robertson that I must decide that it is not in point, or at least that it is not a controlling authority in favor of appellant's contention.

The legal question remains as to whether I. A. Williams in and by his trust deed vested the title to the real property in question in his son, or, what amounts to about the same thing, whether by that trust deed he divested himself of the legal title to said property. There can be, I think, no question but that a conveyance containing the usual '' operative parts '' of a deed ab-

solute in form, to a trustee in trust to sell the lands, for a purpose authorized by the statute, vests the fee to the property in the trustee. Parsons v. Rhodes, 22 Hun, 80. By so doing the grantor divested himself of all title, legal and equitable, to the property. Briggs v. Davis, 21 N. Y. 574. This latter case it seems to me is very much in point here, and I think is decisive in this branch of the case at bar. As we have already said, it in the nature of things became necessary to have the fee vested in the trustee. "A less estate would not be sufficient to satisfy the purposes of the trust." Bennett v. Garlock, 79 N. Y. 317.

However, there remains a difficulty in this case, due, perhaps, to the unfortunate wording of the trust deed. It will be observed from the part hereinbefore quoted that the conveyance is stated to be " for the purpose of selling the above described property." A question arises as to whether the intention of the grantor was that he should reserve in himself the right, perhaps, to the physical possession of the property, or, at least, the right to rent the same and receive the income thereof. Aside from the clause last above quoted this theory finds further support in the language of the trust deed, to the effect that the debts of the grantor to the two trust companies are to be paid " from the proceeds of *sales* of said property," thereby apparently excluding any other income or receipts from the property, which would of course exclude rent. It is perhaps unnecessary to decide this particular point, because, I think, and have held, that both the language of the deed and the effect of the statute are to transfer a fee to the grantee as trustee, and even if we may assume for the sake of the argument that the grantor reserved the right to rent and receive rents, I think it must necessarily follow that any lease or renewal of a lease which he might make after the execution of the

trust deed, would be subject and the lessee would take subject to be divested of his possession by a sale made by the trustee in the performance of his trust. See Briggs v. Davis, 21 N. Y. 577.

Nor do I think there is any injustice involved in this proposition. The jury has decided that the extension agreement was made after the trust deed was given. The latter had been promptly recorded, and the tenant, the defendant here, presumably had notice and knowledge of it. It does not seem to be fair or just, and I think it is not legal to say, that Williams might execute a deed to a trustee authorizing the latter to sell certain of his real estate, or all of it, for the benefit of his creditors, and still reserve in himself the right to make leases, or to extend leases, which would seriously impair the salability of the property in question. No one would buy the property at a fair price under such a state of affairs. If I. A. Williams could extend a lease for five years he might have extended it for fifty years, or given a new one for any term he saw fit. See Real Prop. Law, §§ 100, 101. It will be noticed that in the latter section it is said that section 101 shall not prevent any person creating a trust '' from granting or devising the property, *subject to the execution of the trust.*'' It seems to me that this contains the law on the subject, assuming (without deciding) that Williams had reserved the right to the rents of the property, that his rights, viz.: his rights remaining in the property, for instance, to lease it, etc., were '' subject to the execution of the trust.'' It follows that any lease he might give, or any extension of any outstanding lease, would be subject to and defeated by a sale of the property by the trustee in pursuance of '' the execution of the trust.'' A conveyance to a trustee vests in him '' such title as will enable him to execute his trust.'' Matter of Tompkins, 154 N. Y. 634, 644.

It is held that a conveyance in trust (by will) gave the trustee the entire legal estate in the land, subject to the right of the grantor to enforce performance to the trust in equity; and that a deed thereafter given by the grantor passed nothing to the grantee, but an equitable right to enforce the performance of the trust. Duvall v. English E. L. Church, 53 N. Y. 500.

There are many cases in which the ultimate fee to the property is not necessarily or clearly disposed of by the will or deed, and in which the question of where the fee is located has been the subject of much litigation. Such were the cases of Matter of Tienken, 131 N. Y. 391, and Matter of L'Hommedien, 138 Fed. Rep. 606. In these and many similar cases it has been held that the trustee took a limited estate only, the ultimate title, viz.: the estate of inheritance, being vested in others. That was so because the scheme of the will or conveyance definitely so provided, or perhaps failed to locate it. The trustees were held vested with a title commensurate with the equitable estate created, and the remainder was not permitted to wander around in empty space, but was held vested in those designated in the will as the ultimate beneficiaries. · It was held in both of these cases that the power of sale in both trustees did not enlarge their estate. The question of the vesting of the fee is one of intention on the part of the grantor to be gleaned from the instrument. Morse v. Morse, 85 N. Y. 53.

I think the intention of the testator in the case at bar to vest an estate in fee in his trustee cannot be gainsaid. If any doubt existed on that subject it is eliminated by the concluding provision of the trust deed, which provides that, as soon as the grantor's obligations to the two trust companies shall be paid or discharged, the trustee " shall reconvey to the party of the first part all of the above described premises,

or all of such part thereof as shall not have been sold by the party of the second part under and by virtue of this instrument.'' I therefore hold that the extension agreement endorsed upon the lease in question by I. A. Williams was subject to be defeated and was defeated by a sale of the property by the trustee. It therefore follows that the term of the defendant's lease ended on the 31st day of March, 1913, and that the petitioners were entitled to an order dispossessing defendant because of the expiration of his term, providing no errors were committed on the trial.

While defendant was being examined as a witness he was asked this question: ·'' When did you first see defendant's Exhibit 1 for identification when it had all the writing on it that it has now, except the certificate or recording in 1912, not in the presence of I. A. Williams?.'' This was objected to and excluded on the ground that defendant was incompetent to testify under section 829 of the Code of Civil Procedure, and it is urged by appellant that that ruling constitutes reversible error. Exhibit 1 was the lease in question, and the question may be simplified for the purpose of our consideration by reducing it to something like the following form: When did you first see the endorsement of renewal upon the lease when I. A. Williams was not present?

There is no other conceivable purpose for the evidence except to establish by the testimony of Weilhamer, a party to the extension, which clearly was a transaction with I. A. Williams, now deceased, the *date* when the extension was signed, and, presumably, it was sought to show in that manner that the assignment antedated the trust deed. The question was ingenious. In terms it excludes the presence of the deceased person. However the fact remains that Weilhamer could not have seen the endorsement before it was put there,

and the question is whether he should have been permitted to have testified that at some time in the absence of the deceased person he saw this endorsement in question, and should be permitted to state when he did see it. This of course excludes the actual transaction of the signing of the extension by Williams, but presumably when Williams and Weilhamer had signed the extension, or soon thereafter, they parted. As soon as the door was closed between them Weilhamer might have " seen Exhibit 1 in its present condition, not in the presence of I. A. Williams." Can he be permitted to testify as to the time when that was? In support of the contention that he can, appellant cites a number of cases. Among them is that of Wadsworth v. Heermans, 85 N. Y. 639. This case involved a question to a witness as to whether at a certain date the name of a party since deceased had been inserted as assignee in the usual endorsement found on the back of stock certificates. The trial court permitted the witness to answer upon the grounds: " We do not think the inquiry involved any personal transaction between Hill and Fellows. It respected merely the then condition of the bond. It neither affirmed nor negatived any personal transaction between the two. The insertion of his name in the blank might well have been the separate and independent act of Fellows." It seems to me that this state of facts must be differentiated from those in the case at bar. In *that* case the physical condition of the bond as concerned the filling in of an endorsement was at issue, and evidence on that point was received, upon the theory that the filling in of that name was or might have been *ex parte,* and was not in the nature of things a two-party transaction; whereas in the case at bar we have a two-party agreement signed by the dead man and the witness. The decedent's signature is admitted, and the sole con-

ceivable object of the testimony offered was to estab-
lish the date when the extension agreement was signed,
clearly a transaction inhibited. Furthermore it clearly
appears from a careful reading of the Wadsworth v.
Heermans case that the evidence of Hill was to the
effect that, at the time in question, the name of the de-
cedent was *not then* in the endorsement. The case is
near the border line, but lacks much of being an au-
thority as claimed by defendant here. Furthermore
the evidence offered was negative and served to con-
trovert negatively evidence offered by the plaintiff, a
fact which brings that case within the rulings of a line
of cases cited by appellant. Among them is Funson
v. Salisbury, 15 App. Div. 214, which seems to be au-
thority for the proposition that where plaintiff had pro-
duced a witness who swore that he had seen a bill of
sale from the defendant in the possession of a woman
since deceased, that it is error to refuse the defendant
permission to deny that he ever signed such a paper,
" even although the ultimate result of such testimony
was to negative the occurrence of a personal trans-
action between himself and the deceased." To the
same effect is Lewis v. Merritt, 98 N. Y. 206, in which
the ruling with reference to this kind of evidence is
clearly stated. Pinney v. Orth, 88 N. Y. 447, cited by
appellant, is a case where a witness had testified to the
details, including time and place of twenty interviews
between decedent and defendant, and it was held that
one could not testify that any particular communica-
tion or transaction did or did not take place, but that
section 829 did not go so far as to " preclude the sur-
vivors from testifying to extraneous facts or circum-
stances which tended to show that a witness who has
testified affirmatively to such a transaction or commu-
nication has testified falsely; " as, for example, that
witness was then absent from the country. The evi-

dence offered by defendant could not be received to contradict anything with reference to it that was offered by plaintiff. All there was on that subject or along that line was the testimony of the trustee, Aras J. Williams, whose testimony was to the effect that he did not know when the endorsement was made, nor when he first saw it. This is purely negative and does not require or permit any such testimony as was offered by defendant to rebut it, because there was nothing to rebut.

In passing upon this ingenious attempt to establish the date of the transaction between the witness and the deceased person, we must consider the purposes of the statute, section 829 of the Code of Civil Procedure, as applied to this particular case. It is a matter of the utmost importance in this case as to *when* the endorsement of the extension was made upon the lease, exhibit 1. Clearly the making of that endorsement is a transaction or communication between Weilhamer, the defendant, and the decedent, I. A. Williams. Griswold v. Hart, 205 N. Y. 397. I think the law involved in the subject is very tersely stated in one of the head-notes to the case of Clift v. Moses, 112 N. Y. 426, which says: '' Said Code not only prohibits direct testimony of the survivor that a personal transaction did or did not take place, but also prohibits his testifying to what, on its face, may seem an independent fact, when it appears by other evidence that it had its origin in or directly resulted from a personal transaction, he may not testify to subsidiary facts which originated in or proceeded from such a transaction.'' Now, clearly the question of when Weilhamer might have first seen the endorsement in question, '' when I. A. Williams was not present,'' is utterly immaterial, except for one purpose, and that purpose is obviously the one stated, viz.: to establish the fact of its existence. Can he be per-

mitted to say that after he had closed the door and left
I. A. Williams he saw the endorsement signed by I. A.
Williams? If he can I. A. Williams is not alive to con-
tradict that it was there to be seen at that particular
time, and it seems to me to be absolutely clear that that
fact should prevent the defendant from giving the tes-
timony offered. To hold otherwise would be " to allow
an interested party to give testimony against the suc-
cessor in interest of a deceased person relating to
matters which the death of the deceased had placed
beyond the power of the adverse party to contradict."
It is unfortunate that the extension agreement does not
bear any date. That fact may have an innocent ex-
planation; the date may have been omitted merely
through inadvertence, but its absence inevitably casts
more or less suspicion upon the instrument, in view
of the circumstances of this case. I cannot believe
that it would be either fair or legal to permit Mr. Weil-
hamer to testify in effect to the date of that endorse-
ment, when Mr. Williams is not alive to contradict him.
I, therefore, reach the conclusion that the ruling in the
court below was correct.

The judgment may, therefore, be affirmed.

Judgment affirmed.