(96 Misc. Rep. 433)

## In re KOHLER et al.

### (Surrogate's Court, New York County. July 29, 1916.)

**1. WILLS ☞215—CONSTRUCTION—SURROGATE'S COURT.**

Ordinarily the Surrogate's Court cannot proceed to construe a will, unless as auxiliary to active relief of some kind competent in the tribunal.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 522, 523; Dec. Dig. ☞215.]

**2. WILLS ☞700—CONSTRUCTION—CONSIDERATION OF RIGHTS OF PASSIVE PARTY.**

In proceedings to construe a will, to determine who is entitled to accumulated income, where all the beneficiaries have been joined in the proceeding, and all of them, except testator's widow, make some claim to the income, though the widow is not urging affirmatively any contention, her rights are to be considered in the same aspect as if she were an active litigant; the trustees representing her interest.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1678; Dec. Dig. ☞700.]

**3. WILLS ☞619—CONSTRUCTION—ESTATE CREATED.**

Where testator's will set aside out of his residuary estate a share sufficient to yield his widow $25,000 per annum, payable semiannually during her natural life, the widow was entitled to $25,000 per annum during her life, and to nothing more, no remainder interest being limited in the corpus of the fund, so that the remainder fell into the residuary estate; the persons entitled to the next eventual estate of the widow's trust fund being the residuary legatees.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1437; Dec. Dig. ☞619.]

**4. ANNUITIES ☞1—DEFINITIONS—"RENT CHARGE."**

An "annuity," at common law, was a yearly sum charged on the person of the grantor, an annual payment charged on land being a "rent charge," while, when a sum was payable annually by trustees, the payments were not "annuities," either in law or in equity, before they were dubbed such by the real property statute of 1896.

[Ed. Note.—For other cases, see Annuities, Cent. Dig. §§ 1–6; Dec. Dig. ☞1.

For other definitions, see Words and Phrases, First and Second Series, Annuity; Rent Charge.]

**5. WILLS ☞684(2), 729—RIGHTS OF BENEFICIARIES IN INCOME.**

Where an annuity is created, the annuitant is entitled to the stipulated payment per annum, irrespective of the earnings derived from a particular corpus or fund; but, where a trust fund is created, the beneficiaries are entitled to all income earned on the portion mentioned in the will, and, in the case of annuities, where the income is insufficient, the executors or trustees may encroach upon the principal, even in the absence of a specific direction, which is not permissible in the case of a real or express trust.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1615, 1781–1784; Dec. Dig. ☞684(2), 729.]

**6. WILLS ☞684(10) — TESTAMENTARY TRUSTEES — REVIEW OF JUDGMENT — ABUSE OF DISCRETION.**

Where testator directed trustees to set aside out of the residuary estate funds sufficient to yield his widow an income of $25,000 a year, the judgment of the trustees may be reviewed by the Surrogate's Court, if evincing an abuse of discretion.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1628; Dec. Dig. ☞684(10).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. WILLS ☞619, 684(6), 755—TESTAMENTARY TRUST—RIGHTS OF BENEFICIARY.

Where a will directed trustees to set aside sufficient out of his residuary estate to yield his widow an income of $25,000 a year for life, the interest given the widow was the beneficial interest in a trust fund, the corpus of which was to be determined by the trustees, and not an annuity, nor a demonstrative legacy; the accumulated surplus of income could not be used for the deficit of succeeding years, but belonged to the owners of the next eventual estate; the corpus of the trust could not be invaded to meet the deficit; the trustees could not set aside out of surplus income, in full years, any funds to meet future deficits of lean years; and, before distributing any surplus income in a particular year to those entitled to the remainder interest, the trustees should apply such surplus to any deficiencies in income for all preceding years.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1437, 1622–1624, 1947, 1948; Dec. Dig. ☞619, 684(6), 755.]

8. WILLS ☞669—TESTAMENTARY TRUSTS.

Where testator's will gave the residue of his estate to trustees, to set aside a portion sufficient for the purpose, and to hold the same in trust for his three daughters, investing and reinvesting, paying over the sum of $25,000 per annum semiannually to each of his daughters during their natural life, with payments of sums of $100,000 at the ages of 25, 35, and 45, etc., a valid trust, was created, and the amount of the corpus, once fixed, was not changeable; the funds so withdrawn from the residuary estate being separate and distinct funds thereafter.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1575, 1576; Dec. Dig. ☞669.]

9. PERPETUITIES ☞9(1)—ACCUMULATION OF INCOME.

The income of a testamentary trust cannot be lawfully accumulated after the beneficiary reaches 21 years.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. § 67; Dec. Dig. ☞9(1).]

10. WILLS ☞587(4)—RENTS AND PROFITS—DISPOSITION—STATUTE.

Under Real Property Law (Consol. Laws, c. 50) § 63, providing that when, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which rents and profits are undisposed of, and no valid direction for accumulation given, they shall belong to the person presumptively entitled to the next eventual estate, made applicable to personalty by Personal Property Law (Consol. Laws, c. 41) § 11, where testator created trusts out of his residuary estate for the benefit of two infant daughters. remainder to go to their issue, if any, in the absence of such issue, testator's next of kin take.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1288; Dec. Dig. ☞ 587(4).]

11. WILLS ☞587(4)—PERSONS ENTITLED TO NEXT EVENTUAL ESTATE—STATUTE.

Under said sections persons presumptively entitled to the next eventual estate are those who are entitled to the estate which is to take effect at the end of the period during which the rents and profits are undisposed of or are not validly accumulated.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1288; Dec. Dig. ☞587(4).]

12. WILLS ☞587(4)—RESIDUARY CLAUSE—DISPOSITION OF RENTS AND INCOME.

A residuary clause does not necessarily dispose of the rents and income of trust funds within said sections; the statutory provision referring

to a specific disposition of rents and profits, to take effect pending the vesting in possession of an expectant estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1288; Dec. Dig. ⊙═ 587(4).]

13. WILLS ⊙═587(4)—DISPOSITION OF INCOME—STATUTE.

In every case where there is a fixed specific trust fund and an expect- ant estate created therein, a residuary clause operates to prevent the hold- er of the next eventual estate from taking the income, under Real Prop- erty Law, § 63, made applicable to personalty by Personal Property Law, § 11.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1288; Dec. Dig. ⊙═587(4).]

14. WILLS ⊙═587(4)—RIGHT TO RENTS—RESIDUARY CLAUSE.

In no case where the rents of property, pending the vesting in posses- sion of the expectant estate, are disposed of, can the holder of an ex- pectant estate be entitled to such rents so long as a residuary clause can be found in the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1288; Dec. Dig. ⊙═587(4).]

15. WILLS ⊙═587(4)—RIGHT TO RENTS AND PROFITS—STATUTE.

The purpose of Real Property Law, § 63, made applicable to personalty by Personal Property Law, § 11, is to allow him who is to take the fu- ture estate also to take the rents and profits in the interim, pending the vesting in possession of his estate, where such rents and profits are not given to another.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1288; Dec. Dig. ⊙═ 587(4).]

16. WILLS ⊙═587(4)—DISPOSITION OF INCOME—LEGALITY—STATUTE.

Said section means that the only disposition of income which prevents its operation is a valid disposition.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1288; Dec. Dig. ⊙═ 587(4).]

17. STATUTES ⊙═206—CONSTRUCTION.

It is a cardinal rule that, in construing a statute, effect must be given, if possible, to every portion.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 283; Dec. Dig. ⊙═206.]

18. PERPETUITIES ⊙═9(1)—INVALID DISPOSITION OF RENTS AND PROFITS— UNLAWFUL ACCUMULATION.

The only invalid disposition that can be made of rents and profits is an unlawful accumulation.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. § 67; Dec. Dig. ⊙═9(1).]

19. PERPETUITIES ⊙═4(1)—VESTING OF EXPECTANT ESTATE.

An expectant estate must vest within the prescribed time allowed by the statute of perpetuities in order to be valid.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4, 40, 41; Dec. Dig. ⊙═4(1).]

20. PERPETUITIES ⊙═9(1)—DISPOSITION OF RENTS AND PROFITS—STATUTE OF PERPETUITIES.

The only disposition of rents and profits which can be made is one pend- ing the permitted period of the statute of perpetuities.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. § 67; Dec. Dig. ⊙═9(1).]

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**21. WILLS ⊘—705—CONSTRUCTION—DECREE AWARDING SPECIFIC AMOUNTS.**

In proceedings for the construction of testator's will, to determine who were entitled to the income of various trust funds, no direction could be made for the payment of specific amounts of accumulated income, nor for the constitution of the various trust funds, where the latter matter was for future action by the trustees.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1682; Dec. Dig. ⊘— 705.]

Petition of Veronica M. Kohler and others, as executors and trustees of the last will and testament of Charles Kohler, deceased, for the construction of the will of the testator. Order directed to be settled in accordance with the opinion.

See, also, 91 Misc. Rep. 462, 154 N. Y. Supp. 958.

O'Gorman, Battle & Vandiver, of New York City (James A. O'Gorman, of New York City, of counsel), for trustees.

Henry C. Quinby, of New York City (Henry C. Quinby and George Edwin Joseph, both of New York City, of counsel), for respondent Florman, legatee and devisee.

Daniel J. Mooney, of New York City (Charles H. Tuttle, of New York City, of counsel), special guardian, for Nils Kohler Florman.

Timothy Murray, of New York City, special guardian, for Vera M. Kohler and Rita M. Kohler.

FOWLER, S. [1] This is a proceeding for the construction of a will, particularly the eighteenth paragraph thereof, and to determine the proper disposition of very large accumulations and also those entitled to certain remainders over and for other and general relief. The matter has been argued by able counsel at length, and I am inclined to express my opinion as desired, but only in view of the conclusion reached, as no one can be prejudiced thereby, and the opinion may tend to facilitate counsel in the conduct of the accounting directed to follow. Ordinarily this court cannot proceed to construction unless, as auxiliary to active relief of some kind, competent in this tribunal. Matter of Will of Losea, 160 N. Y. Supp. 514; Matter of Harden, 88 Misc. Rep. 420, 150 N. Y. Supp. 743; Matter of Catlin, 89 Misc. Rep. 93, 151 N. Y. Supp. 254.

It appears that Mr. Charles Kohler, the deceased testator, was survived by his widow, Veronica M. Kohler, and also by three children, Olga V., Vera M. and Rita M. Kohler. The two last named are infants. Olga V. married Mr. Nils Florman, and has attained her majority. On the 18th day of January, 1915, Nils K. Florman, a son of said Olga Florman, was born. Under the will of Mr. Kohler trusts are created in favor of his children and his widow. The corpus of the estate has yielded a very large income, considerably more than necessary to pay the required annuities. On December 1, 1915, such excess of accumulated income amounted to $1,209,318.48, a considerable portion of which was in existence prior to the birth of the grandchild, Nils K. Florman. The questions presented to the surrogate in this proceeding grow out of this extensive accumulation of income.

⊘—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

After giving various general legacies and specific legacies the testator provides in his will, paragraph eighth thereof, as follows:

"Eighth. All the rest, residue and remainder of my estate, both real and personal, and of whatsoever description and wheresoever situated, I give, devise and bequeath unto my trustees hereinafter named, in trust, as follows: First, to set aside out of my said residuary estate, a share or portion thereof sufficient for the purpose, and to hold the same in trust, for my daughter Olga V., investing and reinvesting the same from time to time and paying over the sum of twenty-five thousand dollars ($25,000) per annum, payable semiannually during her natural life, and in addition thereto when she arrive at the age of twenty-five (25) to pay over to her the sum of one hundred thousand dollars ($100,000); when she arrive at the age of thirty-five (35), a further sum of one hundred thousand dollars ($100,000), and when she arrive at the age of forty-five (45), a further sum of one hundred thousand dollars ($100,000), and upon her death, to pay over the balance remaining unpaid of the share or portion of my said residuary estate so set aside for her benefit as aforesaid, to such of her issue as shall be living at her death, share and share alike. Should any of her issue die before her, leaving issue at her death, then such issue shall take in equal shares the share the parent would have received had he or she survived her death. Should my said daughter, Olga, die leaving no issue surviving her, then, in that event, the said share or portion herein provided for shall pass into and become part of my residuary estate."

Subdivision second of Mr. Kohler's will contains a similar provision, of which the daughter, Vera M., is the beneficiary. Subdivision third contains a further and similar provision, of which the daughter, Rita M., is the beneficiary. Subdivision fourth is as follows:

"Fourth. To set aside out of my said residuary estate, a share or portion thereof sufficient for the purpose, and to hold the same in trust for my wife, Veronica M. Kohler, investing and reinvesting the same from time to time and paying over the sum of twenty-five thousand dollars ($25,000) per annum, payable semiannually during her natural life."

Paragraph eighteenth of the will is as follows:

"Eighteenth. Should there be any balance or residuary estate remaining after the bequests hereinbefore provided for, including the trusts also hereinabove created, then I give, devise and bequeath the same to my said children to be divided between them share and share alike."

[2] Pursuant to the authority contained in the will, the trustees have continued the business of the testator. The trustees have to some extent, perhaps, constituted the four trust funds out of the entire residuary estate, although they ask for instructions on this point. As the testator's business has yielded a very large income, a vast accumulation of income has resulted. The trustees now ask the surrogate to determine to whom such excess income is payable. All the beneficiaries have been joined in this proceeding. All of them, except the widow, make some claim to the accumulated income. Although the widow has defaulted, as the trustees in a proceeding of this kind are bound to be and are indifferent and impartial, the trustees may be deemed to represent the widow's interest. Although the widow is not urging affirmatively any contention, her rights are to be considered in the same aspect as if she were an active litigant.

The adult daughter, Mrs. Florman, insists that the residuary estate provided for in paragraph eighteenth of her father's will includes all

accumulated income, and that it should be distributed one-third to each surviving daughter of the testator. The two infant daughters of the testator, appearing by their special guardian, join with their sister in such construction. The grandson and infant child of Mrs. Florman by his special guardian advances the claim that the accumulated income upon the trust corpus set aside, pursuant to subdivision first of paragraph eighth, belongs to such grandchild as the owner and holder of the next eventual estate under section 63 of the Real Property Law.

[3] It seems to be conceded by all the parties appearing herein, that all accumulations derived from the trust estate created in favor of the widow, Mrs. Veronica M. Kohler, fall into the residuary. As the income derived from the widow's trust fund is not the source of the real controversy amongst the parties appearing herein, the testament will first be examined for the purpose of ascertaining whether such conceded construction, which excludes the widow, is correct. With that inquiry disposed of, the real questions can be considered without embarrassment. Mrs. Kohler's rights are scarcely open to argument. Under subdivision fourth of the will all that Mrs. Kohler takes is a life interest. She is entitled, under the will, to $25,000 per annum during her life and to nothing more. No remainder interest is limited in the corpus of the trust fund held for Mrs. Kohler. The remainder, therefore, falls into the residuary estate. The persons entitled to the next eventual estate of the trust fund, so set aside for Mrs. Kohler, are the residuary legatees. Craig v. Craig, 3 Barb. Ch. 76, at page 101; Youngs v. Youngs, 45 N. Y. 254; Riker v. Cornwall, 113 N. Y. 115, 20 N. E. 602; Lamb v. Lamb, 131 N. Y. 227, 30 N. E. 133; Matter of Miner, 146 N. Y. 121, 40 N. E. 788; Matter of Allen, 151 N. Y. 243, 45 N. E. 554. Whether we conclude that subdivision fourth of paragraph eighth of the will operates upon and is effective in withdrawing from the residuary estate only $25,000 per annum, or whether we conclude that the sums set aside by the trustees to constitute the corpus of the trust as the trust fund governed by the provision of subdivision fourth, the residuary legatees are clearly entitled to the accumulated income derived from the trust fund held for the benefit of Mrs. Kohler.

[4] The income derived from the funds set aside for the daughters cannot be so summarily dismissed. The disposition of those accumulations and their ownership, as well as the determination of the quality and the extent of the interests created by the four subdivisions of paragraph eighth of the will present substantial issues. While the disposition of the income already accumulated in the instance of the widow's trust does not require extended discussion, this is not so with respect to the nature of the fund required to be set aside for the annual payments to the widow. A determination of the nature of the interests created under paragraph eighth of the will involves a consideration of the distinction between "annuities" and "trusts" for the payment of income. The interests given to the widow and the daughters are not in a technical sense "annuities." Unfortunately there is in this state some embarrassment about the use of the term "annuity."

The adoption in several statutes of this state of the common-law term "annuities" to denote annual payments derived from trust funds or trust estates, owes its origin to the real property statute of 1896. The real confusion follows that act. An "annuity" at common law was a yearly sum charged on the person of the grantor. Nothing else was an annuity. When an annual payment was charged on land it was at common law a "rent charge." When a sum was payable annually by trustees the payments were not "annuities," either in law or in equity before our statutes dubbed them "annuities" with some sacrifice of principle, and with utter disregard of that common-law terminology which is an essential part of the common law itself.

[5] The distinction between "annuities" and trusts for the payment of income to beneficiaries is a substantial one. Where an annuity is created the annuitant is entitled to the stipulated payments per annum, irrespective of the earnings derived from a particular corpus or fund. Where a trust fund is created, however, the beneficiaries are entitled to the entire income earned on the portion mentioned in the will. In the case of annuities, where the income is insufficient, the executors or trustees may encroach upon the principal, even in the absence of a specific direction. In the case of a real or express trust, the trustees are not permitted to pay out any portion of the principal unless the will specifically so authorizes.

The principles laid down in Spencer v. Spencer, 38 App. Div. 403, 56 N. Y. Supp. 460, a case not relied upon by counsel before me, are, I think, applicable here. In that case the court distinguishes between "annuities" and trusts. The will provided that the executors should set apart a certain portion of the testator's real estate, in their judgment sufficient to yield a net income of $25,000, and hold this real estate in trust, and out of the income pay $25,000 per annum to the testator's widow for life and any balance of income to those persons who, during the widow's life, should presumptively be entitled to take the corpus of the trust estate. During the first five or six years the trust estate produced a net income of about $30,000 per annum. During the years ending May 1, 1896, and May 1, 1897, a deficit of $2,000 resulted. All the surplus income for the earlier years, except $4,000, had been distributed to those entitled to the next estate. In an action for construction of the will it was distinctly held: First, that the interest given to the widow was the beneficial interest in a trust fund the corpus of which was to be determined by the trustees, and not an annuity nor a demonstrative legacy; second, the accumulated surplus of $4,000 could not be used for the deficit of the years 1896 and 1897, but belonged to the owners of the next eventual estate; third, that the corpus of the trust could not be invaded to meet the deficit; fourth, that the trustees could not be directed, and it would not be lawful for them, to set aside in the future, out of surplus income in full years, any funds to meet future deficits of lean years; fifth, that before distributing any surplus income in a particular year to those entitled to the remainder interest the trustees should apply such surplus to any deficiencies in income for all preceding years. That is, income determined at the end of a year to be surplus, above the requirements of annual payments for that year, should be used for past deficits.

[6, 7] The principles announced in Spencer v. Spencer with one modification appear to me to govern the construction of Mr. Kohler's will. The amount of the corpus of the trust funds in Spencer v. Spencer was, in the language of the will, left to the judgment of the trustees. In the case now before me no such uncontrolled discretion is expressly bestowed. The trustees here are to set aside out of the residuary estate funds sufficient for the purpose. Their judgment doubtless may be reviewed by the court if evincing an abuse of. discretion. The amount of the corpus necessary .for the payments may be determined as a fact by the trustees, subject to such review. The court's finding will be an ultimate adjudication binding upon all the parties. The trust funds, once so constituted, will be held by the trustees, pursuant to paragraph eighth of the will of Mr. Kohler, and the income disposed of pursuant· to the rules announced in Spencer v. Spencer. In that case the rules laid down for the disposition of the income and the payments of the sums to the beneficiaries were deduced from the decisions of Stewart v. Chambers, 2 Sandf. Ch. 382, Cochrane v. Walker, 4 Dem. 164, and Matter of Chauncey, 119 N. Y. 77, 23 N. E. 448, 7 L. R. A. 361, in all of which they were applied.

The interests created by paragraph eighth of Mr. Kohler's will are not, I think, governed by the decision rendered in Griffen v. Keese, 187 N. Y. 454, 80 N. E. 367. That case is relied upon by the counsel for Mrs. Florman as decisive of this case. In many respects the facts in Griffen v. Keese are, doubtless, similar to those in the matter now here. But all semblance of similarity vanishes in the light of the distinction already pointed out between "annuities" and annual payments of income from trust funds. In Griffen v. Keese, the testator created a number of "annuities" amounting to $10,000, and in order to assure their payment testator provides:

"And I direct that my executors do set apart and invest a fund sufficient to produce the above annuities, or a sufficient amount of stocks to be held for that purpose or a part of each which fund and the unappropriated income thereof is on the decease of the annuitants as they respectively die to be divided among my grandchildren who shall be living at the time of the death of the respective annuitants, per capita and not per stirpes, only retaining an amount sufficient to produce the required amount for the remaining ·annuitants."

The residuary estate was placed in trust with direction to the executors, after conversion into cash, to hold the proceeds in trust for testator's grandchildren. Remainders were given to testator's surviving issue, and to the survivors of testator's grandchildren on the death of any without issue. By a codicil the benefits of the residuary clause were taken away from the grandchildren. By reason of the death of some of the annuitants there was an accumulation of income arising from the falling in of their annuities. Some of the accumulations arose because the funds set aside were too large. The action was one brought by the trustees for an accounting and construction. They sought the aid of the court to determine the ownership of the accumulated surplus income. After overruling the plea of res adjudicata, based upon earlier accountings, the Court of Appeals decided that the sum set aside as corpus for the production of the annuities was excessive

and should be reduced from $400,000 to $150,000, which latter sum had been fixed by the Appellate Division. The principal so found to be unnecessary was decreed to be a part of the residuary. The income likewise was placed in the residuary. The court distinguished carefully "annuities" and "income derived from trust funds." Four of the learned judges held that the will established annuities and set aside a fund merely sufficient for their payment. The majority, per Werner, J., said:

"Having created a number of annuities the testator found it necessary to create a fund for their production. His executors were therefore directed to set apart and invest 'a fund sufficient to produce the above annuities.' Not an unlimited fund, not an excessive fund, but a sufficient fund. The production of these annuities is the underlying subject-matter of this part of the will. * * * That is the evident purpose of this clause. The distribution of this fund was clearly not the primary object of its creation; that was to be mere incident, because the death of the annuitants from time to time would be sure to reduce the income that was necessary, and that would operate to release a part of the fund. The testator's direction as to the establishment of the fund was practically reiterated as to its subsequent maintenance, for the trustees are admonished to retain only 'an amount sufficient to produce the required amount for the remaining annuitants.'"

The majority believed annuities had been created, not a trust fund for the payment of income to beneficiaries. The three dissenting judges, per Gray, J., deemed that a valid trust had been created, and the amount of the corpus once fixed was not changeable. The fund so withdrawn from the residuary was thereafter a separate and distinct trust fund.

[8] The testator, in the case now before me, created four separate trust funds, not four annuity funds. The rule laid down by the majority in Griffen v. Keese for the distribution of annuity funds is therefore not in point. Rather, indeed, it is the rule enunciated by the dissenting judges which governs, because trust funds were provided by Mr. Kohler. The reasons which impelled the Court of Appeals to construe the will in Griffen v. Keese as it did are not here present. The eighth paragraph of Mr. Kohler's will provided in the case of each daughter, not merely for annual payments of income, but also for three payments of principal amounting each to $100,000. Surely the testator did not intend that the amounts set aside to meet the requirements of principal were to vary. It is difficult to impute an intention to have separate funds for the principal and separate funds for the production of the yearly payments. It may therefore be taken as controlling that the testator never contemplated changing trust funds. Another distinction between this will and that construed in Griffen v. Keese is that in the latter will the ultimate residuary was to be kept in trust. In this will the residuary is distributable at once. Any shortcomings of the funds set aside cannot be replenished out of the residuary. Is this fact not an indication of the fixedness of the trust funds? The trustees under Mr. Kohler's will are "to set aside" the necessary funds and "to hold the same in trust." Such funds "shall pass into and become part" of the residuary estate upon the death of each daughter without issue surviving. The language is that usually employed to create trusts, not to create annuities. Again, if the funds were to

vary, some portion might be returned into the residuary before the beneficiary's death. If there are annuities, why was it also provided in the fourteenth paragraph that if the trust funds were retained in the testator's business, any deficit of income should be remedied out of capital? The right to increase the corpus at intervals would suffice for that purpose.

It seems to me that no argument can be predicated of the testator's deliberate choice to omit naming definite amounts. This he did, because when he wrote his will it could not be determined what sums would be needed either to earn the annual income or to meet the installments of principal. The testator could not, indeed, tell whether his business would be continued after his death. Thus several considerations prompted a postponement of the actual determination of the quantity of the corpus of the trusts. In the case of the trust for the widow there is no remainder interest, and no payments of principal are provided, but all the other controlling reasons are present for construing that trust in the same way as the others. Moreover, there is no indication of intention upon the part of the testator to differentiate the trusts.

[9] The trusts under paragraph eighth of Mr. Kohler's will are, as above stated, governed by the decision in Spencer v. Spencer. The surplus income is not directed to be accumulated. As Mrs. Florman has attained her majority, the income in her fund, after she reaches 21 years, could not lawfully be accumulated.

The remaining question in this case is whether said surplus accumulations pass under section 63 of the Real Property Law, made applicable to personalty by section 11 of the Personal Property Law, or, on the other hand, pass under the residuary clause. Section 63 of the Real Property Law, extended in its application to personalty (section 11, Personal Property Law), prevents the transfer of the accumulated income in question to the residuary estate, that is, if we assume that the accumulations as such are severable from and taken out of the residuary estate. Section 63 of the Real Property Law provides as follows:

"When, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership during the continuance of which the rents and profits are undisposed of and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate."

[10] In respect of the trust fund for Mrs. Florman the holder of the next eventual estate is her infant child. The owners of the expectant estate in the trusts created for the benefit of the two infant daughters of the testator are not ascertained or in being. Their issue, if any, would be the owners of such estate. In the absence of issue, under the statute, upon the assumption made, the testator's next of kin take. U. S. Trust Co. v. Soher, 178 N. Y. 450, 70 N. E. 970.

[11] The persons presumptively entitled to the next eventual estate are those who are entitled to the estate which is to take effect at the end of the period during which the rents and profits are undisposed of, or are not validly accumulated. Matter of Harteau, 204

N. Y. 292, 97 N. E. 726; Matter of Tompkins, 10 App. Div. 572, 42 N. Y. Supp. 412, modified 154 N. Y. 634, 49 N. E. 135; Young v. Barker, 141 App. Div. 801, 127 N. Y. Supp. 211; Meldon v. Devlin, 31 App. Div. 146, 53 N. Y. Supp. 172, affirmed 167 N. Y. 573, 60 N. E. 1116; Staples v. Mead, 152 App. Div. 745, 137 N. Y. Supp. 847. The statute refers to those who are presumptively entitled at the time the income accrues, even though the corpus of the estate, by reason of subsequent events, may eventually rest elsewhere.

[12-14] A residuary clause does not ex necessitate rei dispose of the rents and income within the meaning of section 63 of the Real Property Law. If we deem the trust funds to be fixed amounts, all the accumulations thereof would not pass into the residuary estate. on the ground that the residuary clause amounted to a disposition of the rents and profits within the meaning of section 63 of the Real Property Law. That statutory provision refers to a specific disposition of rents and profits, to take effect pending the vesting in possession of an expectant estate. In every case where there is a fixed specific trust fund and an expectant estate created therein, the residuary clause would operate, as contended by counsel for the residuary legatees, to prevent the holder of the next eventual estate from taking the income under section 63. Then in no case where the rents, pending the vesting in possession of the expectant estate are disposed of could the holder of an expectant estate be entitled to such rents so long as a residuary clause could be found in the will.

Matter of Harteau, supra, is a distinct authority to the contrary. In that case, under the will, the executors were directed to make annual payments out of the residuary estate to the testator's wife during her life, and other payments to two nieces during the lifetime of the widow, and upon her death the executors were directed to appropriate from the general fund $35,000, to be expended in the erection of a statute of General Lafayette; the remaining estate was to be paid to certain named institutions. The only annuitant surviving was the widow. The assets of the estate consisted of 160 shares of corporate stock in the Metropolitan Plate Glass Insurance Company. By reason of a stock dividend, surplus income amounting to $17,722.39 was in the hands of the trustees at the time of the filing of their account. The Court of Appeals, modifying the decision of the Appellate Division, held that such surplus income belonged to the Lafayette fund and not to the corporations entitled to the residuary estate.

The case may therefore be deemed an authority for holding that the persons presumptively entitled to the next eventual estate are the persons entitled to take presumptively at the time the income is to be distributed. In that case there was a residuary estate which was broad enough to carry the undisposed of income. The decision is authority for the rule that the disposition referred to in section 63 of the Real Property Law is a specific and particular disposition of the rents and profits. Apparently even a broader holding was made, and the residuary estate was held not to include the income earned by the excess of the corpus over the $35,000 necessary for the trust fund. Although the fund amounted to only $35,000 out of the entire estate

of $41,000, the entire surplus income, upon an examination of the record on appeal, appears to have been earned on a particular portion of the estate, amounting to less than $35,000, namely, $32,000. The court deemed that the fund of $35,000 had been constituted out of that portion of the estate on which the accumulated income had been earned. To the same effect are Meldon v. Devlin, 31 App. Div. 146, 53 N. Y. Supp. 172, affirmed 167 N. Y. 573, 60 N. E. 1116; Craig v. Craig, supra, 3 Barb. Ch. at page 93.

The case of Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971, referred to by the learned counsel for Mrs. Florman, does not decide that the residuary clause constituted a disposition of the rents and profits within the meaning of section 63, so as to render that section inoperative. In Cochrane v. Schell it happened that the residuary beneficiaries were also the owners of the expectant estate. The income went to them, not by virtue of their being residuary legatees or devisees, but because they were the persons who owned the presumptive estate, out of which the income accrued. In order to find out who were the persons presumptively entitled it was necessary to inquire who were the beneficiaries of the residuary estate. At page 538 of 140 N. Y. (35 N. E. 978) the court said:

"It must be conceded, we think, that the surplus rents and profits were undisposed of within the meaning of this section. The implied disposition attempted was unlawful and void, and it is the same as if no disposition whatever had been attempted."

Obviously the court did not consider the residuary clause as a disposition within the meaning of section 63; otherwise the court would not have employed this language and would not have quoted section 63 of the Real Property Law to sustain the right of the beneficiaries to the residuary estate.

Again, in Endress v. Willey, 122 App. Div. 110, 106 N. Y. Supp. 726, cited by learned counsel, a similar situation exists. In the absence of a residuary clause there would not have been an expectant estate, and the court inquired whether there was a residuary clause not for the purpose of determining whether there was a disposition of the rents and profits within the meaning of section 63 of the Real Property Law, but for the purpose of determining whether there was an expectant estate.

In Matter of Hoyt, 116 App. Div. 217, 101 N. Y. Supp. 557, also cited, the testator created a trust fund for the benefit of his daughter during her natural life, with remainder over upon her death. The trustees were empowered to apply the net income or to accumulate such income as was not needed. Such accumulations were to pass to the remaindermen. The learned Appellate Division for the First Department held that the accumulated income existing at the time of the death of the daughter belonged to her personal representatives, not to the remaindermen. They held that section 63 of the Real Property Law did not apply, because there was a valid disposition of the entire income. The learned justices construed the will to mean that the life tenant was entitled to the entire income and that the discretion reposed in the trustees was as to the method of payment and not as to the

amount of income which they should pay to the daughter. They found a valid specific disposition of the income. Therefore the section referred to could not apply.

In St. John v. Andrews Institute, 191 N. Y. 254, 83 N. E. 981, 14 Ann. Cas. 708, another authority relied upon, the will in question created a trust for the life of the widow and upon her death the residuary estate, in excess of a particular sum specifically bequeathed, was given to a corporation which was directed to be formed as soon as practicable after the death of the survivor of the testator and his wife. The testator and his wife perished in a common disaster, and the question before the court was to whom belonged the income of the residuary estate pending the incorporation of the beneficiary entitled to take the remainder estate. The court held that as the corporation was not in existence it could not be the person entitled to the next eventual estate, within the meaning of the Real Property Law, and that therefore the accumulated income passed to the testator's next of kin under the Statute of Distributions. The case can in no way be deemed an authority to support the proposition that a general residuary prevents the operation of section 63 of the Real Property Law.

[15] Not only do the authorities not sustain the proposition advanced by counsel, but in many instances, where there has been a residuary clause, section 63 has been held to pass the income to the holder of the expectant estate. The purpose of the statute is to allow him who is to take the future estate also to take the rents and profits in the interim, pending the vesting in possession of his estate, where such rents and profits are not given to another. "The statute is founded upon the presumption that the donor of property may naturally be disposed to intend the income should go to the same person to whom he had given that out of which the income arises." Phelps, Ex'r, v. Pond, 23 N..Y. 69.

[16] Another objection urged against applying section 63 is that the accumulations would be unlawful, and that section 63 has no application where there is an unlawful disposition of the rents and profits. In Central Trust Co. v. Egleston, 47 Misc. Rep. 475, at page 484, 95 N. Y. Supp. 945, at page 951, the court said that:

"In this case, although an attempt was made to unlawfully accumulate the income and postpone its enjoyment in possession, nevertheless all the income was disposed of."

If the court intended to maintain the proposition that a disposition of the income, even though unlawful, was a sufficient disposition within the meaning of section 63, the learned court doubtless erred. The judgment was reversed in the Court of Appeals, 185 N. Y. 23, 77 N. E. 989, although the reversal resulted not from a different application of section 63, but because the Court of Appeals found the entire trust as limited to be void. In Cochrane v. Schell, supra, it will be observed that the court said that an unlawful disposition of the income is just the same as no disposition (140 N. Y. page 538, 35 N. E. 971).

What is the real meaning of section 63 of the real property statute? It reads as follows:

"When, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the person presumptively entitled to the next eventual estate."

This provision does not mean, first, that the holder of the next eventual estate is to take if there is no valid accumulation, and then that he does not take if there is an invalid accumulation. The statute cannot have these two inconsistent meanings. The condition that there be no valid accumulation implies that in the absence of a valid accumulation the statute operates. This provision does not exclude the holder of an expectant estate if there is an admitted disposition of the income. The portion of the statute "during the continuance of which the rents and profits are undisposed of" must mean *validly* disposed of. Otherwise it would conflict with the other portion, "no valid direction for their accumulation is given." The statute would first state that it is not to apply if the income is disposed of validly or invalidly, and then that it is to apply only if no valid disposition of a particular kind, namely, the accumulation, is made. The statute must therefore be held to mean that the only disposition which prevents its operation is a valid disposition. Numerous cases hold that there must be a valid, not an invalid, disposition of an expectant estate before section 63 can apply to undisposed of income and profits. I have often had occasion to refer to these decisions and will not repeat them.

[17-20] An unlawful accumulation does not prevent the statute from taking effect. There is, however, one difficulty which confronts us in thus construing the statute. It is a cardinal rule that in the construction of a statute effect must be given, if possible, to every portion. It is true that the only invalid disposition that can be made of the rents and profits is an unlawful accumulation. An expectant estate must vest within the prescribed time allowed by the statute of perpetuities in order to be valid. The only disposition of the rents and profits which can be made is one pending such permitted period. Therefore as the disposition, if not an accumulation, must be valid, the only invalidity which can be ascribed to a particular disposition is that it is an unlawful accumulation. Thus the words "during the continuance of which the rents and profits are undisposed of" have the same force and effect as the words "no valid direction for their accumulation is given" unless the term "undisposed of" is limited in some way. It is apparent that the draughtsman of the statute meant and intended to say in using the words "undisposed of" a disposition other than through an accumulation. In short, all that is meant is that the persons who are presumptively entitled to the next eventual estate will take, first, unless the rents and profits are undisposed of by some valid provision other than an accumulation, and second, unless there is a valid accumulation.

Applying the principles laid down, the following should, I think, guide the trustees in their handling of the trust estates. It must, I presume, be conceded that the trustees, by coming into court and asking for a construction of the will so as to enable them properly to constitute the trust funds and properly to distribute the income, ad-

mit that they have not definitely established the trust funds, although, under the interpretation which we have placed on the will, they ought to be the first to pass upon the amount of the trust funds. As they have not so done they should, I think, definitively constitute the trust funds for the four trusts mentioned in paragraph eighth of Mr. Kohler's will out of sufficient amounts of corpus so as, in their opinion, to enable them to pay over the net income to the three daughters, as provided by paragraph eighth, of $25,000 per annum, and to pay over to each of them the installments of principal also prescribed in that paragraph. This is also true in the case of the trust for Mrs. Kohler. The trustees should set aside a sum sufficient to enable them to pay her $25,000 per annum. Furthermore, as there has not been any definitive separation of the trust funds it would not be correct to regard any accumulations of income, in excess of the requirements of paragraph eighth, accumulations on a particular trust fund within the rules laid down in Spencer v. Spencer, before cited. Therefore, until such trusts are definitively constituted, this excess income remains a portion of the residuary estate. This is so, not because the trust funds required for the provisions of paragraph eighth are to be deemed varying amounts, but because until they are permanently constituted they are not carried out of the residuary estate so as to prevent the latter from including them in favor of the beneficiary under paragraph eighteenth.

The trustees, having once constituted the trust funds as herein provided, thereafter all accumulations on the four trust funds should be disposed of as follows: In the case of subdivision 1, for Mrs. Florman, all excess income should be applied according to the rule in Spencer v. Spencer. All surplus for a particular year should be paid over to the holder of the next eventual estate, that is, to the issue of Mrs. Florman, at the time of such payment. If at such time a deficit exists in the annual payments made to Mrs. Florman theretofore, such deficit should be payable, first, out of the surplus. In the case of the trust funds for the two minor children, under subdivisions second and third, a similar disposition of the income should be made, except that all accumulations not needed for past deficits should be paid to those entitled to the next eventual estate. That is, if there be issue, they take. If there be no issue, then those entitled under paragraph eighteenth will take.

[21] The learned special guardian for the grandchild, Nils K. Florman, urges in this proceeding that none of the parties are entitled to a distribution of the principal or income in this proceeding as this proceeding is ostensibly one for the construction of the will, not one for an accounting. No direction ought, I think, to be made at present for the payment of the income accumulated, nor for the constitution of the various trust funds. That, as already stated, is for future action by the trustees. No decree awarding specific amounts or directing specific amounts be set aside can, I think, be now made. Upon the next accounting of the trustees, in which they show the separation of the trust funds, if no objection be made in regard to the amount of the corpus of the respective funds, the court can exercise such review

684 NEW YORK SUPPLEMENT

as it deems proper. At that time a decree may also be passed for distribution of the accumulations upon the various trust funds.

If an accounting proceeding be begun at an early date, before the decree in this case is made, such accounting proceeding can be consolidated with this under section 2535 of the Code of Civil Procedure, and then a decree can be made which will be of more service and practical value to the trustees. I am unwilling to go further into the matter at this time. On the accounting the entire contentions may be presented de novo and without prejudice. Settle order accordingly.